1997 ND 246

**In the Interest of R.N.**

**Cherie DENNING, Petitioner and Appellee,**

v.

**R.N., Respondent and Appellant.**

**Civil No. 970375.**

Supreme Court of North Dakota.

Dec. 24, 1997.

Gregory I. Runge (argued), Bismarck, for Respondent and Appellant.

Leann K. Bertsch (argued), Assistant State's Attorney, Bismarck, for Petitioner and Appellee.

MESCHKE, Justice.

[¶ 1] R.N. appeals a treatment order committing her to the North Dakota State Hospital for ninety days and authorizing forced medication for mental illness. We reverse.

[¶ 2] R.N. has an extensive history of mental health appeals. *See In Interest of R.N.* (*R.N. I*), 450 N.W.2d 758 (N.D.1990); *In Interest of R.N.* (*R.N. II*), 453 N.W.2d

819 (N.D.1990); *In Interest of R.N.* (*R.N. III* ), 492 N.W.2d 582 (N.D.1992); *In Interest of R.N.* (*R.N. IV*), 513 N.W.2d 370 (N.D. 1994). This one began with a petition for involuntary commitment on November 17, 1997. The petitioner, with West Central Human Service Center, stated R.N. was not taking the medications prescribed by her psychiatrist and was not keeping her mental health appointments. She reported R.N. had "been focusing on death," "wanting to drive to the cemeteries and to a local office building where her daughter committed suicide to pray." The petition also alleged witnesses had seen R.N. "making sexually inappropriate comments" and flashing people. The petition asserted: "History indicates that [R.N.'s] non-compliance of medication is an endangerment to herself and others by continued escalation of above described behaviors."

[¶ 3] After a preliminary hearing, the trial court ordered R.N. into temporary treatment, and R.N. was examined by Dr. Haider. Before the treatment hearing on December 5, 1997, Dr. Haider filed a request for an order to force-treat R.N. with medications. At the hearing, R.N. requested a continuance because notice of this request had been received just the day before. However, R.N. offered to withdraw her request for a continuance if the request for forced medication was withdrawn. Both requests were then withdrawn with the approval of the court.

[¶ 4] After the hearing, the trial court found R.N. was mentally ill and required treatment under NDCC 25–03.1–02(11)(c), and ordered R.N. hospitalized and treated for a period not to exceed ninety days. Although the forced-medication request had been withdrawn, the court inexplicably ordered R.N. be force-treated with medications during her commitment. R.N. orally requested a stay of the forced-medication order, but the trial court denied a stay.

[¶ 5] That same day, R.N. filed this expedited appeal. Simultaneously, R.N. moved this court for a stay of execution and for a thirty-day extension for filing her brief. This Court immediately granted a stay of that part of the order "ordering involuntary treatment with medication ... until further order of this Court." The stay order also extended R.N.'s time for filing her briefs and, as required by law, set oral argument within 14 days after the notice of appeal.

■ [¶ 6] On appeal, R.N. argues the trial court's denial of a stay of the forced-medication order violated her right to due process. She contends that denial of the stay forced her to appeal prematurely, and thus impeded her ability to properly present this appeal. She cites no supporting authority for her argument.

[¶ 7] A mental-health respondent is allowed to appeal an order of involuntary commitment within thirty days after its entry. NDCC 25–03.1–29. Although this irregular order authorizing forced medication may have caused R.N. to appeal without delay, her appeal enabled the stay that benefited her procedurally. That is the essence of due process.

[¶ 8] On an appeal, the law directs "the hearing must be commenced within fourteen days of filing of the notice of appeal." NDCC 25–03.1–29. The rule to expedite mental health appeals abbreviates the briefing schedule accordingly. NDRAppP 2.1(d). Although, normally, an appellant's brief must be filed and served with the notice of appeal, this court's stay order gave R.N. five extra days to file her brief. R.N. has neither sought more time nor indicated a need to file a supplemental brief.

[¶ 9] R.N. again seeks a different standard of review. Our standard is well settled:

> Our precedents on the ... care, treatment, and commitment of mentally ill persons, identify the conflicts between the needs for protection and liberty in imposing involuntary controls.... To balance the competing interests of protection and liberty in these situations, our decisions expect trial courts to use a clear and convincing evidentiary standard, while our appellate review under NDRCivP 52(a) uses a more probing "clearly erroneous" standard.

*R.N. IV*, 513 N.W.2d at 371 (quoting *Matter of Guardianship of Braaten*, 502 N.W.2d 512, 518 (N.D.1993)). "[W]e will affirm an order for involuntary treatment unless it is induced by an erroneous view of the law or if we are

firmly convinced it is not supported by clear and convincing evidence." *R.N. IV,* 513 N.W.2d at 371. We are "limited to a review of the procedures, findings, and conclusions of the lower court." NDCC 25–03.1–29. As we recited in *R.N. I,* 450 N.W.2d at 761 (emphasis original), an involuntary treatment order requires "clear and convincing proof that the mentally ill individual is a person who *requires* treatment as defined by the statute, not one who would benefit from treatment."

█ [¶ 10] Both sides stipulated, with the trial court's approval, not to hear the request for a forced-medication order under NDCC 25–03.1–18.1. Neither side offered evidence on whether such an order was "clinically appropriate and necessary," as the statute requires. *Id.* at (1)(a)(1). The appellee-petitioner does not contest the trial court should not have entered an order for forced medication because there was no evidence that R.N. was currently refusing to take prescribed medications. We conclude the trial court's forced-medication order was unsupported and inappropriate. We reverse it.

[¶ 11] North Dakota law authorizes involuntary treatment only when the petitioner proves by clear and convincing evidence the respondent is mentally ill and requires treatment. *In Interest of M.B.,* 467 N.W.2d 902, 903 (N.D.1991). Here, the trial court found R.N. is mentally ill and requires treatment. Whether a person requires treatment needs a two-step analysis. First, the court must find the person is mentally ill, and second, the court must find there is a reasonable expectation that, if the person is not hospitalized, there exists a serious risk of harm to himself, others, or property. NDCC 25–03.1–02(11); *In Interest of D.H.,* 507 N.W.2d 314, 315 (N.D.1993). On appeal, R.N. does not contest she is mentally ill.

[¶ 12] A mentally ill person may be involuntarily hospitalized, however, only if "there is a reasonable expectation that if the person is not hospitalized there exists a serious risk of harm to [herself], others, or property." *Id.* The pertinent part of NDCC 25–03.1–02(11)(c) says:

"Persons requiring treatment" means a person who is mentally ill or chemically dependent, and there is a reasonable expectation that if the person is not treated there exists a serious risk of harm to that person, others, or property. "Serious risk of harm" means a substantial likelihood of:
. . .

c. Substantial deterioration in physical health, or substantial injury, disease, or death, based upon recent poor self-control or judgment in providing one's shelter, nutrition, or personal care; . . .

We thus review whether the evidence clearly proved a substantial likelihood of substantial deterioration in R.N.'s physical health.

█ [¶ 13] As in *D.H.,* the petitioner called no witnesses at this treatment hearing to support the allegations in the petition against R.N. Only the testimony of the treating psychiatrist was presented, and he, as in *D.H.,* based his testimony about potentially risky behavior by R.N. on the assumption all the allegations were true. Under the North Dakota Rules of Evidence, which govern involuntary treatment hearings, a doctor may consider those allegations when forming an expert opinion. NDREv 703. However, "[t]he commitment petition does not serve as proof that [the respondent] must be committed." *D.H.,* 507 N.W.2d at 316. Instead, the allegations must be proven by evidence.

[¶ 14] Like *D.H.,* there is no evidence here the underlying allegations were true. Even if they were true, they are generalized descriptions of inappropriate behavior that connote little risk of physical harm to R.N. Thus, the basis for Dr. Haider's opinion is weak, if not nonexistent, rather than clear and convincing. This record does not meet our statutory standard requiring clear and convincing evidence of a "substantial likelihood of . . . substantial deterioration in physical health." *Id.* at 315; NDCC 25–03.1–02(11)(c). We are firmly convinced this involuntary treatment order is not supported by clear and convincing evidence.

[¶ 15] We reverse the involuntary treatment order and the order authorizing forced medication.[1]

---

1. The trial court indicated some uncertainty    about the length of the treatment order:

[¶ 16]  MARING, Acting Chief Judge, NEUMANN and SANDSTROM, JJ., and RALPH J. ERICKSTAD, Surrogate Judge.

[¶ 17]  RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of VANDE WALLE, C.J., disqualified.

It seems to me, based upon the expert's testimony here, one to two weeks ... they will probably release her.  My first inclination was to leave this at twenty-one days, but I am not going to because I think that the respondent would probably respond to that and try to run out the time.  Therefore, the maximum period of time here is ninety days and I will enter such an order.

Since we reverse, we do not consider the length of the treatment ordered.