1998 ND 92

**In the Interest of J.S.**

**William PRYATEL, M.D., Petitioner and Appellee,**

v.

**J.S., Respondent and Appellant.**

**Civil No. 980097.**

Supreme Court of North Dakota.

April 28, 1998.

Charles J. Gilje, Special Assistant Attorney General, Jamestown, for petitioner and appellee.

Cynthia Schaar–Mecklenberg of Paulson and Merrick, Jamestown, for respondent and appellant.

SANDSTROM, Justice.

[¶ 1] J.S. appeals from an order of the district court authorizing continued treatment in the State Hospital for one year. We conclude the appeal was timely, and we also conclude the district court's finding alternative treatment is not appropriate is not clearly erroneous. We therefore affirm.

## I

[¶ 2] J.S. has been here several times. *See In Interest of J.S.*, 545 N.W.2d 145 (N.D. 1996) (*J.S. IV*); *In Interest of J.S.*, 530 N.W.2d 331 (N.D.1995) (*J.S. III*); *In Interest of J.S.*, 528 N.W.2d 367 (N.D.1995) (*J.S. II*); *In Interest of J.S.*, 499 N.W.2d 604 (N.D. 1993) (*J.S. I*). J.S. has been a patient at the State Hospital since 1989, when he was admitted for the tenth time.

[¶ 3] J.S. was served a petition for continuing treatment on December 15, 1997. A hearing was held on December 29, 1997, at which one witness, Dr. Pryatel, a staff psychiatrist at the State Hospital, testified. Dr. Pryatel testified he had had contact with J.S. for approximately six months and was familiar with J.S.'s medical records. Based upon his personal observation of J.S. and J.S.'s past medical history, Dr. Pryatel diagnosed J.S.'s condition as schizophrenia, paranoid type, and Dr. Pryatel also noted J.S. has diabetes. Dr. Pryatel stated J.S. had threatened to kill a police officer in 1989, and was last violent at the State Hospital in 1993. Dr. Pryatel testified J.S. does not believe he has a mental illness or diabetes and refuses to take medication orally, so he is therefore given injectable medications to control both illnesses. Dr. Pryatel testified J.S. is given Haldol D to keep him "from becoming violent and having mood swings...." Dr. Pryatel testified he had not witnessed any violent incidents, but testified J.S.'s medical history indicates he will become violent if he does not take his medication.

[¶ 4] After hearing Dr. Pryatel's testimony, the court concluded J.S. suffered "from a mental illness which substantially impairs his capacity to use self-control, judgment and discretion, and to take oral medication, and that there is a substantial likelihood of harm to himself and others as demonstrated by past acts, threats, and current condition." The court also found "alternative treatment is not appropriate at this time, and that the Treatment Order should be continued for a period of one year." The court informed J.S. he had the right to appeal within thirty days.

[¶ 5] J.S. did not "testify," but during the cross-examination of Dr. Pryatel, J.S. announced he would not show up for any outpatient treatment if ordered because there was nothing wrong with him. J.S. also spontaneously addressed the court at length after the court issued its findings. J.S. stated he did not have a mental illness and the State was only after his money. The court suggested J.S. take his medications so that he might be released. J.S. restated he was not ill and would not take his medications, and stated he would "go down fighting," then we would "see violence," and "you will see the street kid come out of me."

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 25–03.1–03.

## II

[¶ 7] Petitioner contends the appeal in this case was not timely. Because "[t]he time limit for filing a notice of appeal is jurisdictional," *McMorrow v. State*, 516 N.W.2d 282, 283 (N.D.1994), we must first determine whether we have jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 25–03.1–29.

[¶ 8] The court issued its findings of fact and conclusions of law both orally before J.S. and in writing on December 29, 1997. The continuing treatment order was also signed and filed on December 29, 1997. Under N.D.R.App.P. 2.1, an appeal "may be taken by filing a notice of appeal with the clerk of the trial court within 30 days after entry of the order." Under N.D.C.C. § 25–03.1–29, "[t]he notice of appeal must be filed within thirty days after the order has been entered." On March 3, 1998, however, the court issued an order extending "the time to appeal the continuing treatment order entered by the court from 30 days from the signing of this order." The notice of appeal was subsequently filed on March 27, 1998.

[¶ 9] J.S. argues *McMorrow v. State*, 516 N.W.2d 282 (N.D.1994), "held that the trial court in all cases may extend the time period for filing notice of appeal not to exceed 30 days upon a showing of excusable neglect. Hence, the trial court had the authority to extend the time to appeal for a period not to exceed 30 days." (Citation omitted).

[¶ 10] *McMorrow* involved a post-conviction relief action under N.D.C.C. ch. 29–32.1. Under N.D.C.C. § 29–32.1–14, an appeal may be taken by the applicant within ten days of the entry of judgment. This was not done, however, and the Uniform Post–Conviction Procedure Act does not contain a remedy for late filing of the notice of appeal. *McMorrow* at 283. We explained post-conviction actions are civil, and "[u]nder Rule 4, the time limits for filing a notice of appeal may be extended in situations involving excusable neglect." *McMorrow* at 283. We also quoted a portion of N.D.R.App.P. 4(a) (emphasis in original opinion): " 'Upon a showing of excusable neglect, the trial court may extend the time for filing the notice of appeal *by any party for a period not to exceed thirty days from the expiration of the time otherwise prescribed by this subdivision.*' " *McMorrow* at 283. We then held:

> "N.D.R.App.P. Rule 4(a) specifies that the thirty-day extension for excusable neglect is to be added to the sixty-day period under Rule 4(a), rather than a time otherwise provided for bringing an appeal (in this case ten days). Therefore, in civil cases, including post-conviction relief proceedings, the trial court may extend the time for filing a notice of appeal for a period not to exceed ninety days from the date of service of notice of entry of judgment."

*McMorrow* at 283.

[¶ 11] Similar to the post-conviction appeal statute in *McMorrow*, neither N.D.C.C. § 25–03.1–29 nor N.D.R.App.P. 2.1 provide for an extension of time to file the notice of appeal in mental health proceedings. Because this case is also a civil action, *see* N.D.C.C. § 25–03.1–19, we conclude the trial court could properly extend the time for filing the notice of appeal for a period not to exceed ninety days after service of notice of entry of order. There is no notice of entry of order in the record. The order was, however, entered in open court at the December 29, 1997, hearing, at which time J.S. was also given notice of his right to appeal. Even where there is no service of notice of entry of an order, actual knowledge of entry reflected in the record will start the running of the time for appeal. *See Lang v. Bank of North Dakota*, 377 N.W.2d 575, 577–78 (N.D.1985). As such, the ninety-day period began to run on December 29, 1997. The notice of appeal was filed within ninety days of J.S. receiving actual notice. The court, however, erroneously extended the time to file the notice of appeal for thirty days from the date of its order extending the time to file the notice of appeal, rather than ninety days from the date of service of the notice of entry of order (or in this case ninety days from actual notice). Because the extension granted by the trial court, if valid, would have allowed a longer time for appeal than was actually used, and because the notice of appeal was filed within the actual maximum extension period of ninety days after service of the notice of entry of order (or actual knowledge), we conclude we have jurisdiction.

### III

[¶ 12] J.S. argues the trial court "erred in determining that a treatment program other than hospitalization was not adequate to meet the respondent's treatment needs and was not sufficient to prevent harm or injuries that the respondent may inflict upon the individual or others."

### A

[¶ 13] This Court's review of an appeal under N.D.C.C. ch. 25–03.1 is "limited to a review of the procedures, findings, and conclusions of the lower court." N.D.C.C. § 25–03.1–29. The trial court's findings are "subject to a more probing 'clearly erroneous' standard of review." *In Interest of K.J.L.*, 541 N.W.2d 698, 700 (N.D.1996).

### B

[¶ 14] Involuntary treatment is only authorized when the petitioner proves by clear and convincing evidence the respondent is mentally ill and requires treatment. N.D.C.C. §§ 25–03.1–07 and 25–03.1–19; *In Interest of R.N.*, 1997 ND 246, ¶ 11, 572 N.W.2d 820. "The burden of proof in a continuing treatment hearing is 'the same as in an involuntary treatment hearing.' " *J.S. IV*, 545 N.W.2d at 148 (quoting N.D.C.C. § 25–03.1–31(1)).

[¶ 15] In his brief, J.S. "does not contest he is mentally ill or in need of treatment." J.S. argues, however, he has the right, under N.D.C.C. § 25–03.1–40(2), to the least restrictive treatment alternative, and outpatient treatment is the least restrictive alternative. J.S. argues Dr. Pryatel was merely speculating when he stated J.S. would not take medication, would not show up for appointments, and would become violent if other than inpatient treatment were ordered.

[¶ 16] Speculation is clearly insufficient to meet the burden of proof upon the petitioner, and it is imperative witnesses and the court provide a factual basis for their conclusions. *Cf. In Interest of Riedel,* 353 N.W.2d 773, 776 (N.D.1984) (discussing importance of findings of fact "to disclose with specificity the factual basis for the conclusion"). We recently reversed an involuntary treatment order where, although it was alleged medication non-compliance constituted a danger to the patient, "there [was] no evidence ... the underlying allegations were true." *In Interest of R.N.,* 1997 ND 246, ¶ 14, 572 N.W.2d 820. We have also noted, however:

> "Specific evidence about every past episode of violent behavior need not be repeated by eye-witnesses at each hearing in order to prove the substantial likelihood of J.S. harming himself and others, when there is a current expert diagnosis that the uncontrollable violent behavior reflected in his history will recur without medication and treatment."

*J.S.* III, 530 N.W.2d at 334. Furthermore, while "past decisions and findings about J.S.'s violent behavior are not res judicata," *J.S.* III, at 333, as we explained in *J.S.* IV, "[a] court can use what has happened in the past as 'prognostic' evidence to help predict future conduct." *J.S.* IV, 545 N.W.2d at 149.

[¶ 17] In this case, the uncontroverted testimony shows J.S. has become violent when not taking his medications. As Dr. Pryatel testified, and J.S.'s own statements make clear, J.S. refuses to acknowledge his illnesses or to take the necessary steps to eliminate the resulting dangers to himself and others. *Compare In Interest of R.M.,* 555 N.W.2d 798, 800 (N.D.1996); *J.S.* IV, 545 N.W.2d at

147–48. In addition, as in J.S.'s previous cases, J.S. called no expert witnesses of his own to attack the opinion of the State Hospital's psychiatrist. *See J.S.* IV, at 149; *J.S.* III, 530 N.W.2d at 333–34; *J.S.* II, 528 N.W.2d at 369. As we have previously explained, "[t]he weight and credibility given an expert's opinion is a question of fact subject to the clearly erroneous standard of Rule 52(a), N.D.R.Civ.P." *J.S.* II, at 369. We conclude "it 'was not clearly erroneous for the trial court to order continuing treatment for J.S. based on his past record of violent assaultive behavior, coupled with the current and uncontroverted expert opinion that his behavior would revert if the prescribed treatment did not continue.'" *J.S.* IV, at 149 (quoting *J.S.* III, at 334).

## IV

[¶ 18] The continuing treatment order of the district court is affirmed.

[¶ 19] MESCHKE and MARING, JJ., concur.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 20] I continue to adhere to my dissent in *McMorrow v. State,* 516 N.W.2d 282, 283 (N.D.1994) (VandeWalle, C.J., dissenting). Unlike *McMorrow,* here J.S. was informed in open court on December 29, 1997, of the trial court's decision and of J.S.'s right to appeal. I would therefore hold the notice of appeal filed March 27, 1998, was untimely and dismiss the appeal.

[¶ 21] The legislative intent in enacting N.D.C.C., chapter 25–03.1, Commitment Procedures, is to provide prompt treatment of persons with serious mental disorders, to safeguard individual rights and provide continuity of care to those persons with serious mental disorders. N.D.C.C. § 25–03.1–01(1), (2) & (3). The statutory provisions, including section 25–03.1–29, establishing the right to an expedited appeal and requiring the appeal be filed in 30 days, implement that intent, as does Rule 2.1, N.D.R.App.P., prescribing procedures for the appeal.

[¶ 22] The majority opinion permits an extension of this 30 day period to 90 days. Although here the commitment is for a period of one year under section 25–03.1–22(2), N.D.C.C., the appeal section also applies to section 25–03.1–22(1) which limits an initial order for involuntary treatment to not exceed 90 days. The time for appeal under the majority's opinion is equal to the permitted period of commitment, in that instance! I recognize the time limits prescribed by chapter 25–03.1, N.D.C.C., are primarily for the benefit of the individual. But, ultimately, orderly procedure also benefits the individual.

[¶ 23] I also recognize that while the Court has the authority to promulgate rules of appellate procedure under Article VI, section 3, N.D. Const., section 6, of that same Article provides that appeals "shall be allowed from decisions of lower courts to the supreme court as may be provided by law." Here the legislature has provided by law that the period for an appeal from a mental health commitment order is 30 days. In *Cottle v. Kranz*, 231 N.W.2d 777, 779 (N.D.1975), the Court noted that when it adopted Rules 3 and 4 of the N.D.R.App.P., it superseded the statutory provisions setting forth the method and time for appeal, found in sections 28–27–05 and 28–27–04, N.D.C.C., by virtue of section 27–02–09 ("statutes relating to pleadings, practice, and procedure ... enacted by the legislative assembly, have force and effect only as rules of court and remain in effect unless and until amended or otherwise altered by rules promulgated by the supreme court") and Rule 49(b), N.D.R.App.P.

[¶ 24] Rule 49(b), specifies that upon the effective date of the appellate rules "all statutes and rules, or portions thereof, in conflict with these rules shall be superseded." Rule 49(a) states the effective date as March 1, 1973. The Table of Statutes Superseded (By Statute) lists the many statutes superseded but section 25–03.1–29 is not among them, nor is section 29–32.1–14, which the majority opinion in *McMorrow* subjected to Rule 4, N.D.R.App.P.

[¶ 25] Interestingly, the Explanatory Note to Rule 1, N.D.R.App.P. reads in part: "[a]lthough most conflicting statutes are found in the Table of Superseded Statutes, it is clear that any existing *or future* conflicting rule or statute relating to appellate procedure is also superseded under the authority, of § 27–02–09, NDCC, and Rule 49(b)." (Emphasis added).

[¶ 26] The Court thus arrogates to itself, without further court action and apparently contrary to section 27–02–09, N.D.C.C., the authority to supersede future legislatively enacted statutes although it apparently denies the Legislature the same authority to enact legislation affecting future events. *See, e.g., McCabe v. North Dakota Workers Comp. Bureau*, 1997 ND 145, 567 N.W.2d 201 (statute that attempts to incorporate future changes is unconstitutional).

[¶ 27] I do not question the authority of the Court to extend the time limit for appeal because of excusable neglect, although I question the wisdom of the time of extension, but the Court's authority is properly and constitutionally exercised through its rule-making procedure, *see*, N.D.R.P.R., not by opinion. Article VI, § 3, N.D. Const.

[¶ 28] Finally, I recognize the effect of a dismissal of the appeal and the effect of the majority opinion is the same: J.S. remains under the commitment order.

[¶ 29] Gerald W. Vande Walle, C.J.


NEUMANN, Justice, concurring specially.

[¶ 30] It is the clear legislative intent in section 25–03.1–29, N.D.C.C., to provide an expedited appellate process for mental health hearings. It is the clear judicial intent in Rule 2.1, N.D.R.App.P., to facilitate an expedited appellate process. It is illogical to permit the happenstance of general language in Rule 4, N.D.R.App.P., to frustrate that intent. I, too, would hold the notice of appeal untimely, and dismiss.

[¶ 31] William A. Neumann