1999 ND 182

**In the INTEREST OF J.K., a/k/a W.J.**

**M.K., Petitioner and Appellee,**

v.

**J.K., a/k/a W.J., Respondent and Appellant.**

**No. 990260.**

Supreme Court of North Dakota.

Sept. 8, 1999.

 

Allen M. Koppy, State's Attorney, Mandan, N.D., for petitioner and appellee.

Gregory Ian Runge, Bismarck, N.D., for respondent and appellant.

SANDSTROM, Justice.

[¶ 1] J.K., also known as W.J., appeals a treatment order committing him to the North Dakota State Hospital for ninety days. We affirm in part, reverse in part, and remand for a hearing on whether a less restrictive treatment alternative to involuntary hospitalization exists.

I

[¶ 2] On July 2, 1999, J.K. threatened to commit suicide. He made these threats to his mother, the petitioner in this action. That day, his mother filed a petition for his involuntary commitment. Emergency treatment was ordered by the district court.

[¶ 3] At the preliminary hearing on July 6, 1999, the district court found probable cause to believe J.K. was a mentally ill person requiring treatment under N.D.C.C. § 25–03.1–02, and ordered J.K.'s screening by the West Central Human Service Center and treatment at a facility designated by the center.

[¶ 4] At the treatment hearing on July 20, 1999, Dr. William Pryatel, a licensed psychiatrist at the North Dakota State Hospital, testified J.K. is mentally ill because he has schizophrenia of the paranoid type, delusional in nature. Dr. Pryatel testified, based upon J.K.'s history of acts and threats, if J.K. were not treated, his mental health would likely deteriorate. Dr. Pryatel noted J.K. was at risk for suicide if he were not hospitalized.

[¶ 5] Also, Dr. Pryatel testified J.K. twice had to be placed in seclusion during the first part of his stay at the state hospital. Dr. Pryatel testified J.K. also made delusional statements during his stay, including that he was the father of over seventy cows and he was inventing a new religion he could use against his doctor. Dr. Pryatel noted J.K. had been hospitalized at the state hospital in 1995. Dr. Pryatel testified J.K. was a mentally ill person requiring treatment under the statute and should be treated as an inpatient at the state hospital for ninety days.

[¶ 6] Dr. Pryatel testified J.K. had seemed improved since receiving treatment. Nonetheless, Dr. Pryatel testified the doctors at the state hospital did not "feel completely safe about just discharging him today." Dr. Pryatel said J.K. should not be released to "the ACS apartments" at the time of the hearing because of J.K.'s "recent history." Dr. Pryatel preferred the staff at the state hospital be able to observe him for several more days in an inpatient setting.

[¶ 7] J.K.'s mother testified he threatened suicide on July 2, 1999, and had threatened to kill himself on at least two earlier occasions. She testified J.K. is very abusive when not on his medication.

[¶ 8] J.K. did not testify, and no one testified on his behalf. The district court found J.K. to be a mentally ill person, requiring treatment, and ordered he be confined to the North Dakota State Hospital for ninety days. The district court also found no less restrictive alternative to the state hospital for treatment of J.K. J.K. appealed on August 19, 1999.

[¶ 9] The appeal was timely under N.D.R.App.P. 2.1 and N.D.C.C. § 25–03.1–29. The district court had jurisdiction under N.D.C.C. § 25–03.1–19. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 25–03.1–29.

II

A

[¶ 10] J.K. contends the district court's decision ordering him to a ninety-

day inpatient treatment was not supported by clear and convincing evidence. To balance the competing interests of protecting a mentally ill person and of preserving that person's liberty, standards of decision require district courts to use a clear and convincing standard of proof while this Court uses a more probing 'clearly erroneous' standard of review. *In the Interest of M.S.*, 1999 ND 117, ¶ 5, 594 N.W.2d 924. In reviewing involuntary commitment cases, this Court treats the district court's finding of clear and convincing evidence a person requires treatment as a finding of fact and will not set it aside unless it is clearly erroneous. *In the Interest of K.J.L.*, 541 N.W.2d 698, 700 (N.D.1996); N.D.R.Civ.P. 52(a).

[¶ 11] Section 25–03.1–07, N.D.C.C., allows a person to be involuntarily admitted to the state hospital only if the district court finds the person requires treatment as defined under N.D.C.C. § 25–03.1–02(10). *O'Callaghan v. L.B.*, 447 N.W.2d 326, 327 (N.D.1989). Whether a person requires treatment is determined by a two-part test. *In the Interest of R.N.*, 1997 ND 246, ¶ 11, 572 N.W.2d 820. First, a person must be found mentally ill. *Id.* (citations omitted). Second, the court must find "there is a reasonable expectation that, if the person is not hospitalized, there exists serious risk of harm to himself, others, or property." *Id.*

[¶ 12] While J.K. admits to having a mental illness, he alleges the district court failed to show he is a person requiring treatment. Under N.D.C.C. § 25–03.1–02(11), a person requiring treatment is defined as a "person who is mentally ill ... and there is a reasonable expectation that if the person is not treated there exists a serious risk of harm to that person, others, or property." Under the statute, a serious risk of harm is present when there is a "substantial likelihood" of:

a. Suicide, as manifested by suicidal threats, attempts, or significant depression relevant to suicidal potential;

b. Killing or inflicting serious bodily harm on another person or inflicting significant property damage, as manifested by acts or threats;

c. Substantial deterioration in physical health, or substantial injury, disease, or death, based upon recent poor self-control or judgment in providing one's shelter, nutrition, or personal care; or

d. Substantial deterioration in mental health which would predictably result in dangerousness to that person, others, or property, based upon acts, threats, or patterns in the person's treatment history, current condition, and other relevant factors.

N.D.C.C. § 25–03.1–02(11).

[¶ 13] Dr. Pryatel's testimony, combined with J.K.'s mother's testimony, provided a sufficient basis for the district court's finding by clear and convincing evidence that J.K. is a mentally ill person requiring treatment. J.K. presented no testimony in opposition to Dr. Pryatel's conclusion. If J.K. wished to challenge the expert opinion of the state's psychiatrist, he should have requested an independent expert examiner under N.D.C.C. § 25–03.1–19. *In the Interest of J.S.*, 528 N.W.2d 367, 369 (N.D.1995). The weight and credibility given to an expert's opinion is a question of fact subject to the clearly erroneous standard of N.D.R.Civ.P. 52(a). *Id.* The district court's acceptance of unrefuted expert testimony is not clearly erroneous. *Id.*

### B

[¶ 14] J.K. argues the district court erred in failing to order a less restrictive alternative for his treatment. He cites the following statutory language in support of his argument:

Before making its decision in an involuntary treatment hearing, the court shall review a report assessing the availability and appropriateness for the respondent of treatment programs other than hospi-

talization which has been prepared and submitted by the state hospital or treatment facility. If the court finds that a treatment program other than hospitalization is adequate to meet the respondent's treatment needs and is sufficient to prevent harm or injuries which the individual may inflict upon the individual or others, the court shall order the respondent to receive whatever treatment other than hospitalization is appropriate for a period of ninety days.

N.D.C.C. § 25–03.1–21(1).

[¶ 15] When an individual is found to be a person requiring treatment under N.D.C.C. 25–03.1–02(10), "he or she has the right to the least restrictive conditions necessary to achieve the purposes of treatment." *In the Interest of J.A.D.*, 492 N.W.2d 82, 86 (N.D.1992). Under this statute, a district court is required to make a two-part inquiry: "(1) whether or not a treatment program other than hospitalization is adequate to meet the individual's treatment needs, and (2) whether or not an alternative treatment program is sufficient to prevent harm or injuries which an individual may inflict upon himself or others." *Id.* (citing *Kottke v. U.A.M.*, 446 N.W.2d 23, 27 (N.D.1989)). The district court must find "by clear and convincing evidence that alternative treatment is not adequate or hospitalization is the least restrictive alternative." *J.A.D.*, at 86. On appeal, this Court will not set aside the finding of the district court unless it is clearly erroneous under N.D.R.Civ.P. 52(a). *Id.*

[¶ 16] In this case, the district court received a "Report Assessing Availability and Appropriateness of Alternate Treatment" from Dr. Nadeem Haider. J.K. was examined by Dr. Haider on July 13, 1999. The report, a preprinted fill-in-the-blank form, stated "[m]edication monitoring, medication follow-up and case management through the West Central Human Service Center" was an alternative treatment program for J.K. Dr. Haider concluded there were no adequate alternatives to involuntary hospitalization and alternative treatment was not in the best interest of J.K. or others because he "is not stable" and has a history of failing to take his medications as an outpatient.

[¶ 17] At the treatment hearing, the following exchange transpired during J.K.'s counsel's closing statement:

MR. RUNGE: My concern, Your Honor, and I think it should be the Court's concern, is to the statute which calls for the Court's consideration to the least-restrictive alternative. And that has not been aptly considered here, and even Dr. Pryatel has admitted that ... the ACS Apartments are the least-restrictive means available. That the doctor's comfort factor is what is in play here, not necessarily my client's treatment factor, which is really the important thing.

The ACS Apartments, Your Honor, as the Court is well aware, were very well capable of taking care of my client's needs in a less-restrictive alternative to the hospital ... I would ask the Court to consider the ACS Apartments.

THE COURT: Mr. Runge, how do I know about these ACS Apartments, other than through statements that you have made, when there's been no evidence in the record as to what they are, what their availability is and their willingness to take Mr. J as a patient? How do I know these things?

MR. RUNGE: Your Honor, the point is that you don't know these things, because the report assessing the availability of appropriateness of alternative treatment was not properly filled in, and this Court has to consider that.

This report does not adequately comply with the statutory mandate. *J.A.D.*, 492 N.W.2d at 86.

[¶ 18] Along with a written report, testimony at trial indicating specifically why alternative forms of treatment are not viable and why appropriate treatment methods are available only in a hospital may be

sufficient to meet the statutory requirements. *In the Interest of J.S.*, 545 N.W.2d 145, 148 (N.D.1996) (holding testimony supporting the report and indicating state hospital was "continuously searching" for an adequate alternative for treatment but no such program existed in the state satisfied requirements of N.D.C.C. § 25–03.1–21(1)); *In the Interest of J.S.*, 499 N.W.2d 604, 607 (N.D.1993) (holding testimony about violent, aggressive, and unpredictable behavior to be clear and convincing evidence that treatment outside a hospital would not be appropriate was not clearly erroneous); *In the Interest of R.R.*, 479 N.W.2d 138 (N.D.1992) (holding report listing two alternatives, which assessed the availability of treatment programs, weighed their appropriateness, and explained its conclusions and rejection of alternatives, along with testimony respondent was paranoiac, antagonistic, violent, and explosive, provided a sufficient basis for concluding there were no appropriate alternative programs). Dr. Haider did not testify at trial. Dr. Pryatel testified, but from his testimony, it is evident Dr. Pryatel had not considered alternatives less restrictive than the state hospital for J.K.'s treatment:

MR. RUNGE: Doctor, had you at all considered in the least the ACS Apartments, because they are more restrictive than his home and they are less restrictive of the hospital? Why wasn't that considered?

THE WITNESS: Generally, we like to play it safe to be conservative and, you know, we like to have—make sure they are doing fine before we release them into the community, into any setting.

MR. RUNGE: Was this in the plan, Doctor?

THE WITNESS: Well, when we are looking at his discharge, then we would. When we are ready to discharge we are just a couple of days or so before discharge, then we will call about and find availability of placement.

MR. RUNGE: So in other words, Doctor, you did not consider the ACS Apartments as alternative?

THE WITNESS: Just as a general, standard operating procedure, we do pretty much like I say. We just wait until they are ready for discharge of inpatient. Just a couple two or three days or so prior to that, then we will, you know, make inquiry there to see if they have a bed open.

Neither Dr. Pryatel's testimony nor Dr. Haider's report constitutes substantial compliance with the statutory requirement that the state hospital prepare and submit a report assessing the availability and appropriateness of treatment programs other than hospitalization.

[¶ 19] The district court used a preprinted, fill-in-the-blank form for its findings of fact, conclusions of law, and order for treatment. This Court has held "[c]onclusive reports, particularly ones with preprinted conclusions checked or underlined without satisfactory explanations, are unacceptable." *In the Interest of T.H.*, 482 N.W.2d 615, 625 (N.D.1992). *See also In the Interest of Ebertz*, 333 N.W.2d 786, 789 n. 2 (N.D.1983); *In the Interest of Rambousek*, 331 N.W.2d 548, 552 (N.D.1983). Such forms "do not carry out the intent of Ch. 25–03.1" and "are not appropriate for findings of fact or an order." *In the Interest of Gust*, 345 N.W.2d 42, 46 (N.D.1984). As this Court stated in *In the Interest of Palmer*:

it is imperative for trial courts to set forth findings of fact that clearly support and explain *both* the determinations that (1) there is or is not in fact alternative treatment sufficient to meet a respondent's needs and (2) there is or is not in fact alternative treatment sufficient to prevent harm. These findings of fact are critical not merely for purposes of our review, but also, and of far more significance, to ensure that the basis for the trial court's decision is clearly articulated thereby demonstrating that the careful and serious

consideration so clearly warranted in the context of an involuntary commitment proceeding has indeed been given.

363 N.W.2d 401, 403 (N.D.1985). The use of forms is not prohibited, however, if adequately supplemented with specific facts on the face of the form or otherwise. *In the Interest of Riedel*, 353 N.W.2d 773, 776 (N.D.1984).

[¶ 20] The district court's finding no less restrictive alternative was available to J.K. is not supported by the evidence. Accordingly, the district court's order is reversed and this matter remanded for a hearing on whether a less restrictive alternative is available for treatment of J.K.

III

[¶ 21] We affirm the district court's order to the extent it ruled J.K. is a mentally ill person requiring treatment, reverse its finding of no less restrictive alternative, and remand for further proceedings consistent with the statutory requirement.

[¶ 22] VANDE WALLE, C.J., NEUMANN, MARING and KAPSNER, JJ., concur.