2003 ND 182

**In the Interest of L.D.**

**Beverly Martell, Petitioner and Appellee,**

v.

**L.D., Respondent and Appellant.**

**No. 20030305.**

Supreme Court of North Dakota.

Dec. 2, 2003.

Julie A. Lawyer, Assistant State's Attorney, Bismarck, ND, for petitioner and appellee.

Gregory I. Runge, Bismarck, ND, for respondent and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] L.D. appealed a district court order requiring him to undergo treatment for chemical dependence. We affirm.

I

[¶ 2] L.D.'s mother ("Petitioner") petitioned the district court to have L.D. involuntarily treated because he was chemically dependent and posed a serious risk of harm to himself. The petition stated L.D. had previously been in treatment for alcohol abuse, had been drinking daily to intoxication, and had not been taking his medication for diabetes and Wernicke's Syndrome. Petitioner was worried L.D. would "die or go into a diabetic coma" *without treatment.*

[¶ 3] On October 8, 2003, an emergency treatment order was issued requiring L.D. to be detained at St. Alexius Medical Center until his treatment hearing on October 14, 2003. When L.D. was admitted to St. Alexius, he had a blood alcohol level of .430 and his blood tested positive for cannabis. Sheri Knutson, a licensed addiction counselor, examined L.D. at St. Alexius. She interviewed L.D., and he admitted to a binge drinking problem—consuming eighteen beers over a three-day period—but Ms. Knutson determined he minimized or withheld information concerning his alcohol use.

[¶ 4] At the treatment hearing, Ms. Knutson was the only witness. Based on L.D.'s own statements and collateral sources, she recommended L.D. undergo inpatient treatment at the West Central Human Service Center ("WCHSC"). She based her conclusion on L.D.'s history of alcohol abuse and its effect on his physical ailments. The district court found L.D. was chemically dependent and there was a substantial likelihood of substantial deterioration in his physical health if he did not undergo treatment. The court ordered L.D. to undergo treatment at WCHSC for a period not to exceed ninety days.

II

[¶ 5] Appellate review of an involuntary treatment order is governed by N.D.C.C. § 25–03.1–29 and is "limited to a review of the procedures, findings, and conclusions of the lower court." *In Interest of R.N.,* 1997 ND 246, ¶ 9, 572 N.W.2d 820. A petition for involuntary treatment must be supported by clear and convincing evidence. N.D.C.C. § 25–03.1–19. Whether clear and convincing evidence was presented in support of the petition is a question of fact and will not be reversed unless it is clearly erroneous. *R.N.,* at ¶ 9. "We will affirm an order for involuntary treatment unless it is induced by an erroneous view of the law or if we are firmly convinced it is not supported by clear and convincing evidence." *Id.*

Whether a person requires treatment needs a two-step analysis. First, the court must find the person is mentally ill [or chemically dependent], and second, the court must find there is a reasonable

expectation that, if the person is not hospitalized, there exists a serious risk of harm to himself, others, or property. *R.N.*, at ¶ 11. It is not enough that a person would benefit from treatment, the person must require treatment. *See In Interest of M.B.*, 467 N.W.2d 902, 904 (N.D.1991).

[¶ 6] Chapter 25–03.1, N.D.C.C., governs commitment procedures for mental illness or chemical dependence, N.D.C.C. § 25–03.1–01(1), and case law relating to commitment of a person with a mental illness is relevant in cases involving commitment of a person for chemical dependence. Section 25–03.1–02(12), N.D.C.C., defines a "person requiring treatment" as

a person who is mentally ill or chemically dependent, and there is a reasonable expectation that if the person is not treated there exists a serious risk of harm to that person, others, or property. "Serious risk of harm" means a substantial likelihood of:

. . . .

c. Substantial deterioration in physical health, or substantial injury, disease, or death, based upon recent poor self-control or judgment in providing one's shelter, nutrition, or personal care. . . .

### III

[¶ 7] As a preliminary matter, L.D. urges this Court to consider whether the district court's finding that he required treatment should be fully reviewable on appeal as a matter of law. We have previously addressed this issue. "[I]t is established that a majority of our court has held that the trial court's determination of clear and convincing evidence that the respondent is a person requiring treatment is a finding of fact subject to a more probing 'clearly erroneous' standard of review by this court." *In Interest of K.J.L.*, 541

N.W.2d 698, 700 (N.D.1996) (citing *In Interest of J.S.*, 530 N.W.2d 331, 333 (N.D. 1995)). "Our standard is well settled," *R.N.*, 1997 ND 246, ¶ 9, 572 N.W.2d 820, and we see no reason to depart from it in the present case.

### IV

[¶ 8] L.D. argues the district court's order should be reversed because Petitioner did not testify at the treatment hearing. He claims Ms. Knutson's testimony was based on information that never would have been obtained had there not been a petition filed. Therefore, L.D. claims her testimony was equivalent to "fruit of the poisonous tree" because there was no testimony establishing a foundation for the petition.

[¶ 9] "At the hearing, evidence in support of the petition must be presented by the state's attorney, private counsel, or counsel designated by the court." N.D.C.C. § 25–03.1–19. This does not require the petitioner to testify, but merely requires evidence to be presented in support of the petition. As long as the evidence presented at a treatment hearing supports the underlying allegations of the petition, the petitioner does not have to be present to testify regarding all the allegations in the petition. The North Dakota Rules of Evidence govern all relevant and material evidence received by the court in an involuntary treatment hearing. N.D.C.C. § 25–03.1–19.

[¶ 10] In this case, the underlying allegations in the petition were that L.D. was chemically dependent and posed a substantial risk of physical danger to himself. Ms. Knutson's testimony supported these allegations. She testified L.D. was admitted to St. Alexius with a blood alcohol level of .430. Her report indicated L.D.'s medical history included "Depression; Wer-

nicke's Encephalopy secondary to chronic alcohol use; Cirrhosis; Peptic Ulcer Disease; Alcohol Abuse/Dependence; Diabetes Mellitus–Type II; GI Bleeding (1996); Psoriasis; and questionable history of Hepatitis C." She testified L.D.'s drinking affects his ability to ambulate, and in combination with Wernicke's Syndrome, this increases his risk of injury. She further testified L.D. has diabetes which is left untreated when he drinks, and his drinking causes his liver condition to get worse. According to Ms. Knutson, this could lead to a substantial deterioration of L.D.'s health.

[¶ 11] L.D. claims this information is hearsay and should not have been admitted into evidence because it would not have been obtained but for the petition. He relies on *In Interest of D.H.*, 507 N.W.2d 314 (N.D.1993) and *R.N.*, 1997 ND 246, 572 N.W.2d 820. *D.H.* involved an appeal from an order for involuntary commitment of D.H. for a mental illness. 507 N.W.2d at 314. The only witness at the treatment hearing, D.H.'s psychiatrist, testified D.H. had schizophrenia and was a person requiring treatment. *Id.* at 315. We observed there was sufficient evidence D.H. was mentally ill, but concluded there was not sufficient evidence he required treatment because the psychiatrist only knew of D.H.'s dangerous activities through statements in the petition that were hearsay. *Id.* at 315–16. The petition alleged D.H. was a danger to himself because he had been walking down the middle of the street, jumping out in front of cars, and stated he would open himself up with a knife. This Court held,

> In the absence of evidence that the underlying allegations are true, the basis for [the psychiatrist's] opinion is weak, if not nonexistent, rather than clear and convincing. That [the psychiatrist] assumes the allegations to be true is not

sufficient. The commitment petition does not serve as proof that D.H. must be committed.

*Id.* at 316 (footnotes omitted).

[¶ 12] In *R.N.*, this Court reviewed the testimony of a doctor, who was the only witness at the hearing, when evaluating whether there was clear and convincing evidence of a substantial likelihood R.N.'s health would substantially deteriorate if she was not hospitalized. 1997 ND 246, ¶ 13, 572 N.W.2d 820. We concluded the doctor based his testimony on the assumption all the allegations in the petition were true and held "[u]nder the North Dakota Rules of Evidence ... a doctor may consider [allegations in a petition] when forming an expert opinion. N.D.R.Ev. 703. However, '[t]he commitment petition does not serve as proof that [the respondent] must be committed.' Instead, the allegations must be proven by evidence." *Id.* (quoting *D.H.*, 507 N.W.2d at 316).

[¶ 13] The present case is distinguishable from *D.H.* and *R.N.* In those cases, the allegations in the petition were necessary to establish D.H. and R.N. were persons requiring treatment. Here, Ms. Knutson determined L.D. was chemically dependent and required treatment from information she gleaned from his medical records and his own statements. Her testimony was not based solely upon the allegations in the petition, rather she confirmed the allegations through independent sources. The trial court properly relied on Ms. Knutson's testimony regarding L.D.'s medical records and her assessment of L.D. It was not clearly erroneous for the trial court to find her testimony provided clear and convincing evidence to support the allegations in the petition as required under N.D.C.C. § 25–03.1–19.

[¶ 14] The order requiring L.D. to undergo treatment is affirmed.

[¶ 15] CAROL RONNING KAPSNER,
MARY MUEHLEN MARING,
WILLIAM A. NEUMANN, and DALE V.
SANDSTROM, JJ., concur.