2008 ND 36

**In the Matter of Darl John HEHN.**

**A.W. Stokes, Richland County State's Attorney, Petitioner and Appellee**

**v.**

**Darl John Hehn, Respondent and Appellant.**

**No. 20070167.**

Supreme Court of North Dakota.

Feb. 21, 2008.

A.W. Stokes, State's Attorney, Wahpeton, ND, for petitioner and appellee; submitted on brief.

Thomas E. Merrick (argued), Merrick & Schaar Law Firm, Jamestown, ND, for respondent and appellant.

KAPSNER, Justice.

[¶ 1] Darl Hehn appeals a district court order committing him as a sexually dangerous individual. We affirm the order.

## I

[¶ 2] In April 1997, Hehn pled guilty to two counts of gross sexual imposition and one count of terrorizing. The charges and convictions were based on an incident involving Hehn's 17–year–old former girlfriend. In May 1996, Hehn took his former girlfriend from her home at gunpoint, sexually assaulted her, and then forced her to have sex with him. Hehn was sentenced to 16 years in prison, with 8 years suspended, for the two counts of gross sexual imposition ("GSI") and to an additional five years, to run concurrently with the GSI sentences, for his terrorizing conviction.

[¶ 3] In June 2003, Hehn was released from prison on supervised probation. He returned to Wahpeton for the probationary period. Heidi Arnholt served as his probation officer. During the course of his probation in Wahpeton, eleven reports regarding Hehn's conduct were filed with Arnholt or the area police department. Several complaints alleged Hehn treated an employee at the public library poorly. Two other reports alleged Hehn walked or drove behind pre-adolescent and teenage girls. One report from the school principal alleged that Hehn's car was seen parked near the high school. Several other complaints came from witnesses who were concerned after they saw Hehn walking through their backyards. Another report provided that Hehn sent a flirtatious email to a girl, who was at or just under eighteen years old, asking her to marry him. Another complaint came from a "youthful looking" twenty-year-old employee at West Acres Mall, who said Hehn came into the store and gave her a sexually inappropriate letter. Several lay witnesses and Arnholt testified about the community complaints.

[¶ 4] Hehn remained under Arnholt's supervision until February 2004, when he was arrested for violating conditions of his probation. Hehn's probation was revoked in June 2004 when he admitted to violating conditions of probation; he was sentenced to two years with the Department of Corrections. Hehn was scheduled for discharge from the North Dakota State Penitentiary on February 12, 2006, when the petition for commitment was filed.

[¶ 5] A commitment hearing was conducted. The State presented two witnesses, Dr. Belanger and Dr. Sullivan, both of whom recommended commitment. Dr. Belanger tested Hehn using the RRA-SOR, Static–99, and MnSOST–R. These three actuarial tests differed as to Hehn's probability to re-offend; one test showed Hehn was low risk, and the other two tests placed Hehn at medium to high risk. Dr. Belanger acknowledged these risk assessment tools did not support the conclusion that Hehn was at high risk for recidivist sexually predatory conduct.

[¶ 6] Dr. Belanger, however, did not rely on these three standard test results because he found Hehn's diagnosis was unique. Thus, the scores were not useful in coming to a conclusion about Hehn because Hehn was "so significantly different from the developmental and standardization samples that the actuarials cannot be applied." To determine Hehn was a sexually dangerous individual, Dr. Belanger relied on the PCL–R2nd, which tests individuals for the mental illness psychopathy. According to Dr. Belanger, the PCL–R2nd provided Hehn was psychopathic. He further found Hehn suffered from a borderline personality disorder and hebephilia, which is a sexual disorder in which an individual is sexually attracted to adolescent girls. Dr. Belanger, in his report, relies in particular on Hehn's 1996 conviction involving a 17–year–old, the accusation that he attempted to make a date with a girl who was either 17 or 18 at the time, walking or driving behind an 11–year–old and 14–year–old, and the letter he wrote to a "very much younger looking 20 y[ear old]" to diagnose Hehn as suffering from hebephilia. Based on his conclusion that Hehn was diagnosable with both psychopathy and hebephilia, Dr. Belanger's report provided that the psychopathy, when combined with the hebephilia, put Hehn "at very high risk for recidivist sexually predatory conduct."

[¶ 7] Dr. Sullivan came to similar conclusions using the PCL–R2nd, diagnosing Hehn with psychopathy and hebephilia, which when combined create a high risk of re-offending. She did not, however, test Hehn using the RRASOR, Static–99, or the Mn–SOST–R because none of the eleven reports filed ever resulted in charges, and these instruments do not account for accusations that do not rise to the level of criminal charges. Thus, Dr. Sullivan believed these actuarial risk assessments would be invalid or "spuriously low" as applied to Hehn. Using the allegations that Hehn "attempt[ed] to talk to two 11–year–old girls walking home at night, and running after them when they tried to run away; . . . following in his car a 14–year–old girl walking home, and asking her if she wanted a ride; loitering around a high school and approaching at least four female students; looking up the address of a female librarian on the Internet," Dr. Sullivan determined Hehn was diagnosable with hebephilia. Dr. Sullivan recommended, based on the interaction between hebephilia and psychopathy, Hehn was likely to engage in further acts of sexually predatory conduct.

[¶ 8] At the hearing, Dr. Volk, an independent psychologist who assessed Hehn, agreed Hehn has borderline personality disorder. He did not diagnose hebephilia. Instead, he diagnosed Hehn with depressive disorder and sexual abuse of a child. Dr. Volk acknowledged allegations made against Hehn while he was in the community, but discounted them in his report, believing that the allegations should not be considered because they could not be verified. Dr. Volk did not diagnose Hehn with hebephilia or any other sexual disorder. Dr. Volk concluded that without the hebephilia diagnosis, future sexually predatory behavior was not predictable. He noted that the conclusions of Drs. Belanger and Sullivan hinged on linking the psychopathy to the hebephilia, but found the evidence used to come to a hebephilia diagnosis was questionable and thus could not be used to support a sexual disorder diagnosis. Dr. Volk did, however, acknowledge during his testimony that he did not have all of the documents Drs. Belanger and Sullivan had to complete his evaluation. Dr. Volk did not recommend Hehn be committed as a sexually dangerous individual, but did agree Hehn was in need of some type of treatment for mental illness.

[¶ 9] Following the hearing on November 28, 2006, the district court issued an

order for commitment. In its Memorandum Opinion, the district court stated:

> Mr. Hehn's pattern of re-occurrent behavior commencing after his conviction, most of which if not all is of a sexual nature, leads Dr. Belanger to his conclusion [that Hehn is a sexually dangerous individual].
>
> As Dr. Belanger points out, Hebephilia is also important to consider. The sexual contact between Mr. Hehn as an adult and the minors, as established by some of the lay testimony, fits within the definition of sexually predatory conduct. This testimony and other parts of the record accumulated by him, leads Dr. Belanger to the conclusion that Mr. Hehn is at risk for sexual behavior with underage females.
>
> . . . .
>
> The record further demonstrates that the treatment which Mr. Hehn received at the Department of Corrections and through his individual counseling does not meet the necessary treatment needed to assist Mr. Hehn in overcoming his sexually predatory conduct.

[¶ 10] Hehn moved the court for a new trial under N.D.R.Civ.P. 59 on December 14, 2006, six days after the entry of the order for commitment. The court denied the motion for new trial on May 31, 2007. Hehn filed his notice of appeal on June 12, 2007.

[¶ 11] Hehn appeals, arguing the appeal is timely under N.D.R.Civ.P. 59 and N.D.R.App.P. 4. He further argues there was insufficient evidence to sustain the district court's order committing him as a sexually dangerous individual.

## II

### A. The Applicability of N.D.R.Civ.P. 59 and N.D.R.App.P. 4

■ [¶ 12] Section 25-03.3-19, N.D.C.C., provides that the notice of appeal must be filed within 30 days after the entry of the commitment order. In this case, Hehn's order of commitment was filed on November 28, 2006, and his notice of appeal was filed on June 12, 2007. Between the order and notice of appeal, 196 days had elapsed. However, on December 14, 2006, Hehn moved the court for a new trial. The court did not deny the motion until May 31, 2007. Hehn filed his notice of appeal June 12, 2007, less than 30 days after notice of entry of the order denying the motion for new trial.

[¶ 13] The North Dakota Rules of Civil Procedure "govern the procedure in the district courts in all suits of a civil nature whether cognizable as cases at law or in equity, with the exceptions stated in Rule 81." N.D.R.Civ.P. 1. Rule 81(a) states that "[s]pecial statutory proceedings, whether or not listed in Table A, are excepted from these rules insofar as they are inconsistent or in conflict with the procedure and practice provided by these rules." Chapter 25-03.3, N.D.C.C., which governs the commitment of sexually dangerous individuals, is not listed in Table A as a special statutory proceeding. Table A is, however, according to its preamble, "a nonexclusive list." This Court has found the Mental Health Act, N.D.C.C. ch. 25-03.1, to be a special statutory proceeding even though it does not appear in Table A. *Interest of T.H.*, 482 N.W.2d 615, 620 (N.D.1992).

[¶ 14] This Court held in *Interest of T.H.* that "[o]ur civil procedures supplement, rather than supplant, the particularized procedures of the mental-health statutes." *Id.* Sexually dangerous individual commitments are similar in nature to mental health commitments. Thus, the rules of civil procedure are applicable to this particular type of commitment as well, insofar as the rules of civil procedure do not

conflict with the commitment statute. *See In re M.D.*, 1999 ND 160, ¶ 27, 598 N.W.2d 799 ("The sexually dangerous individual commitment provisions have been placed in Title 25 of the Century Code, entitled 'Mental and Physical Illness or Disability.' The provisions are close in proximity and content to the provisions for civil commitment of the mentally ill or chemically dependent, contained in N.D.C.C. ch. 25–03.1."). The sexually dangerous individual commitment statutes do not expressly preclude the application of civil procedure in general; nor is there a provision that precludes a motion for new trial in particular.

[¶ 15] Silence on this subject is not an inconsistency, "for when an excepted statutory proceeding is silent on a certain procedural issue, the general rules of civil procedure become applicable." *Tormaschy v. Tormaschy*, 1997 ND 2, ¶ 14, 559 N.W.2d 813. Further, a motion for new trial in the context of sexually dangerous individual commitments does not pose any procedure that may be contrary to the statutory scheme, such as an expedited appeal provision. Because these commitments are of unlimited duration, civil procedures that do not directly conflict with a statute should be available to protect the liberty interests of one facing commitment. Rule 59, N.D.R.Civ.P., does not conflict with the statutory scheme and is not inconsistent with the aims of the Commitment of Sexually Dangerous Individuals Act. Thus, a motion for a new trial may be made in a proceeding under N.D.C.C. ch. 25–03.3.

[¶ 16] In *Interest of J.S.*, 1998 ND 92, ¶¶ 7–11, 578 N.W.2d 91, this Court decided that a district court properly applied N.D.R.App.P. 4 in extending the time for appeal in a mental health case. In a civil case, N.D.R.App.P. 4 requires the notice of appeal to be filed with the clerk of the district court within 60 days of the notice of the entry of the judgment or order from which a party appeals. N.D.R.App.P. 4(a). Under N.D.R.App.P. 4(a)(3)(A)(v), a motion for new trial under N.D.R.Civ.P. 59 tolls the time for filing an appeal. Because this Court has applied N.D.R.App.P. 4 to mental health cases, which are similar to sexually dangerous individual commitments, Rule 4 should toll the time for appeal in this case, making Hehn's appeal timely.

**B. Sufficiency of Evidence to Sustain Order Committing Hehn as a Sexually Dangerous Individual**

[¶ 17] "Civil commitments of sexually dangerous individuals are reviewed under a 'modified clearly erroneous' standard and will be affirmed unless the district court's 'order is induced by an erroneous view of the law, or we are firmly convinced the order is not supported by clear and convincing evidence.'" *Matter of Midgett*, 2007 ND 198, ¶ 6, 742 N.W.2d 803 (quoting *In re Anderson*, 2007 ND 50, ¶ 21, 730 N.W.2d 570).

[¶ 18] To commit a person as a sexually dangerous individual under chapter 25–03.3, N.D.C.C., the State must prove, by clear and convincing evidence, that the person has

[1] engaged in sexually predatory conduct and [2] who has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction that [3] makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others.

N.D.C.C. § 25–03.3–01(8).

[¶ 19] The term "likely to engage in further acts of sexually predatory conduct" means the individual's propensity towards sexual violence is of such a degree

as to pose a threat to others. *Interest of M.B.K.*, 2002 ND 25, ¶ 18, 639 N.W.2d 473; *Matter of G.R.H.*, 2006 ND 56, ¶ 16, 711 N.W.2d 587. In addition to the three requirements contained in the plain language of the statute and this Court's definition of "likely to engage in further acts of sexually predatory conduct," the United States Supreme Court held that in order to satisfy substantive due process requirements, the individual must be shown to have serious difficulty controlling his behavior. *Kansas v. Crane*, 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). This additional consideration is necessary to distinguish a sexually dangerous individual from the "dangerous but typical recidivist convicted in an ordinary criminal case." *Id.*

[¶ 20] In this case, Hehn challenges the sufficiency of evidence for the third prong of the above test, arguing the State failed to prove by clear and convincing evidence that his propensity towards sexual violence is of such a degree as to pose a threat to others, and thus he is, at best, a dangerous, but typical, recidivist, and commitment is inappropriate.

[¶ 21] Hehn argues that because Dr. Belanger admitted the actuarial tests, RRASOR, Static–99, and MnSOST–R, do not support the conclusion that Hehn will likely re-offend, there is not clear and convincing evidence that he will likely re-offend. He further argues the district court was not presented with clear and convincing evidence that he would likely re-offend or that he posed a serious threat to others, because Dr. Sullivan would not administer the test based on her conclusion that the results would be "spuriously low." The fact that these actuarial test scores did not give rise to scores showing a high risk of re-offending does not preclude the fact-finder from coming to an alternative conclusion. "We have previously made clear that we will not engage in a 'contest over percentage points' when it comes to determining whether an individual meets the requirements for civil commitment." *Interest of P.F.*, 2006 ND 82, ¶ 29, 712 N.W.2d 610 (Kapsner, J., concurring) (quoting *In re M.B.K.*, 2002 ND 25, ¶ 18, 639 N.W.2d 473). The concurrence in *Interest of P.F.* noted the importance of independent judicial decision-making and the non-binding nature of actuarial test scores:

Instead, we require a thorough examination done by experts to make the initial recommendation of whether an individual poses a threat to society. A certain test score on the RRASOR or Static–99 does not make an individual automatically committable. If we were to accept such logic, the judiciary would be without purpose. The court has the ultimate decision to determine whether the State has met its burden of producing clear and convincing evidence sufficient for commitment. A psychological test cannot act as a substitute for independent judicial review.

*Interest of P.F.*, at ¶ 29 (Kapsner, J., concurring) (internal citations omitted). The importance of independent judicial decision-making means the judge, rather than the test scores or the psychologists who create them, is the ultimate decision-maker. *Id.* Because this Court has refused to engage in contests of percentage points, the fact that the actuarial tests do not indicate Hehn is statistically likely to re-offend is of little consequence in determining whether there is clear and convincing evidence to support his conviction.

[¶ 22] Hehn also argues that because Dr. Volk found Hehn was not likely to re-offend, based on the fact that Dr. Volk did not diagnose him with hebephilia in conjunction with psychopathy, and because the hebephilia diagnosis made by both Drs. Belanger and Sullivan relied upon community reports that were "unfounded, ...

second or third hand accounts" based on a "tarred" reputation in a small community, the State did not show Hehn was likely to engage in sexually predatory conduct. While Hehn couches this issue in terms of the sufficiency of the evidence, his arguments actually go to the weight the evidence was assigned.

[¶ 23] Several of the individuals who made the reports or were referenced in the reports were called to testify at the commitment hearing. While there were some conflicts between the reports and the testimony, this Court has repeatedly held that "[e]valuation of credibility where evidence is conflicting is solely a trial court function." *Alumni Ass'n v. Hart Agency, Inc.*, 283 N.W.2d 119, 121 (N.D.1979); *see also Estate of Nelson*, 553 N.W.2d 771, 774 (N.D.1996) ("The trial court was in the best position to weigh the conflicting evidence and judge the credibility of the witnesses. If reasonable evidence in the record supports a trial court's findings, we will not retry the case and substitute findings we might have made for those of the trial court.") (internal citation omitted). Here, it could be reasonably inferred that the trial court found the testimony of the witnesses to the alleged reports credible, and gave the reports of Drs. Belanger and Sullivan more weight than that of Dr. Volk. It is not the function of this Court to second-guess the credibility determinations made by the trial court.

[¶ 24] Hehn's prior GSI convictions constitute clear and convincing evidence that Hehn meets the first prong of the commitment statute, which requires that an individual has engaged in prior sexually predatory conduct. The second prong of the sexually dangerous individual statute requires clear and convincing evidence that Hehn suffers from a "congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or

other mental disorder or dysfunction." The reports of Drs. Belanger and Sullivan provide evidence that Hehn is afflicted with both hebephilia, a sexual disorder, and psychopathy, a mental disorder. Thus, this prong of the statute is met. Based upon the interaction of these two diagnosis, Drs. Belanger and Sullivan concluded Hehn was likely to engage in further acts of sexually predatory conduct that constitute a danger to the safety of others. Testimony by the others at the hearing, including Hehn's probation officer and the community members who filed complaints with Hehn's probation officer and police department, supported the determinations of Drs. Belanger and Sullivan. The trial court had evidence beyond the psychologists' reports and the statistical test scores to conclude Hehn was a sexually dangerous individual. There was clear and convincing evidence to support the district court's conclusion that Hehn is a sexually dangerous individual under N.D.C.C. § 25-03.3-01(8).

[¶ 25] We affirm the district court order committing Hehn as a sexually dangerous individual.

[¶ 26] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ., concur.

DALE V. SANDSTROM, J., concurs in the result.