2003 ND 101

**In the Interest of I.K.**

**South Central Human Service Center,
Petitioner and Appellee,**

v.

**I.K., Respondent and Appellant.**

**No. 20030131.**

Supreme Court of North Dakota.

June 17, 2003.

Jay A. Schmitz, Assistant State's Attorney, Jamestown, for petitioner and appellee.

Thomas E. Merrick, Jamestown, for respondent and appellant.

SANDSTROM, Justice.

[¶ 1] I.K. appeals from a May 8, 2003, Southeast District Court order vacating an order of dismissal and discharging her from treatment, and a May 13, 2003, Southeast District Court order for continuing alternative treatment for a period of one year or until further order of the court, ordering her to keep all appointments with her psychiatrist and to take her prescribed medication. I.K. argues the district court erred in vacating its earlier order, and, because she is not a "person requiring treatment" as defined in N.D.C.C. § 25–03.1–02(11), erred in ordering continuing alternative treatment. We affirm the May 8, 2003, order vacating the earlier order as proper, and we reverse the May 13, 2003, continuing alternative treatment order because it is not supported by the evidence.

I

[¶ 2] On August 8, 2002, the district court, following a hearing, ordered continuing alternative treatment for I.K. to undergo outpatient treatment other than hospitalization for nine months through the South Central Human Service Center. I.K. was ordered to follow all recommended treatment and to make herself available to take all medications. She was to reside in a residential setting as directed by a prior guardianship order. On April 8, 2003, the Human Service Center petitioned for a continuing alternative treatment order. On April 28, 2003, the district court held a hearing. At the hearing, I.K. argued the Human Service Center's petition was not filed according to N.D.C.C. § 25–03.1–22(2), which required the hearing to be scheduled within 14 days. On April 28, 2003, the district court dismissed the Human Service Center's petition and ordered I.K. to be discharged.

[¶ 3] The Human Service Center moved to vacate the order dismissing the petition and moved for a hearing. The Human Service Center argued that N.D.C.C. § 25–03.1–22 does not govern I.K.'s case; rather, the appropriate statute is N.D.C.C. § 25–03.1–31. On May 8, 2003, the district court vacated its April 28, 2003, order and scheduled a hearing for May 12, 2003.

[¶ 4] On May 12, 2003, the district court made its findings of fact, conclusions of law and order on the record. The court issued a consistent written order on May 13, ordering that the "Respondent undergo treatment other than hospitalization as follows: Keep all appointments with Dr. Yabut or a psychiatrist that replaces him or that the Respondent hires and continue to take Seroquel until May 12, 2004[,] a period of one year, or until further order of the Court." I.K. appeals from the May 8, 2003, and May 13, 2003, orders.

[¶ 5] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27–05–06, 25–03.1–03. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. §§ 28–27–01, 25–03.1–29.

II

[¶ 6] I.K. contends the District Court wrongly vacated its order dismissing the petition for continuing alternative treatment and discharging her from treatment. I.K. argues the Human Service Center's proper course of action would have been to appeal rather than to move the district court to vacate its order.

[¶ 7] A court may relieve a party from a final judgment under Rule 60(b) for the following reasons:

(i) mistake, inadvertence, surprise, or excusable neglect; (ii) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(iii) fraud (whether denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (iv) the judgment is void; (v) the judgment has been satisfied, released, or discharged, or a previous judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (vi) any other reason justifying relief from the operation of the judgment.

N.D.R.Civ.P. 60(b).

[¶ 8] "It is within the trial court's discretion whether to grant or deny a motion to vacate." *Filler v. Bragg*, 1997 ND 24, ¶ 9, 559 N.W.2d 225. "Absent an abuse of this discretion, we will not set aside the trial court's decision on appeal." *Id.* "A trial court abuses its discretion if it acts in an arbitrary, capricious, or unreasonable manner, or if it misinterprets or misapplies the law." *Id.*

[¶ 9] The South Central Human Service Center argument relates to whether or not the district court correctly applied North Dakota's mental health statutes in rendering its April 28, 2003, order. Because this is not a case involving a question of jurisdiction, the analysis turns to the remaining grounds for setting aside the judgment under N.D.R.Civ.P. 60(b).

[¶ 10] In *Production Credit Ass'n v. Dobrovolny*, we surveyed the factors to evaluate whether a trial court abuses its discretion in denying a Rule 60(b) motion, stating:

"An abuse of discretion by the trial court is never assumed and must be affirmatively established. *Dvorak v. Dvorak*, 329 N.W.2d 868, 870 (N.D. 1983); *Avco Financial Services v. Schroeder*, 318 N.W.2d 910, 912 (N.D. 1982). An abuse of discretion is defined as an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. *Dvorak*, 329 N.W.2d at 870; *Avco*, 318 N.W.2d at 912. A movant for relief under Rule 60(b) has a burden of establishing sufficient grounds for disturbing the finality of the judgment. *Avco, id.; Gajewski v. Bratcher*, 240 N.W.2d 871, 886 (N.D.1976). The moving party must also show more than that the lower court made a 'poor' decision, but that it positively abused the discretion it has in administering the rule. *Bender v. Liebelt*, 303 N.W.2d 316, 318 (N.D.1981). We will not overturn that court's decision merely because it is not the onĕ we may have made if we were deciding the motion. *[State Bank of Burleigh County Trust v.] Patten*, 357 N.W.2d [239] at 242 [ (N.D.1984) ]; *[State v.] Red Arrow [Towbar Sales Co.]*, 298 N.W.2d [514] at 516 [ (N.D. 1980) ].

. . . .

"A 60(b) motion is not to be used to relieve a party from free, calculated, and deliberate choices. *Hefty v. Aldrich*, 220 N.W.2d [840] at 846 [ (N.D.1974) ].

. . . .

"A 60(b) motion is not to be used as a substitute for an appeal. *Hefty*, 220 N.W.2d at 846."

415 N.W.2d 489, 491–92 (N.D.1987) (quoting *First National Bank of Crosby v. Bjorgen*, 389 N.W.2d 789, 794–96 (N.D.1986)).

[¶ 11] The district court dismissed the original order for continuing alternative treatment after relying on I.K.'s argument at the hearing that the Human Service Center motion was untimely under N.D.C.C. § 25–03.1–22. The Human Service Center moved for dismissal of the April 28, 2003, order, claiming a mistake was made in the trial court's order because it was not given notice that I.K. was moving for dismissal under N.D.C.C. § 25–03.1–22, which, it argued, was not the

proper governing statute. The Human Service Center argues "surprise" under Rule 60(b)(i), claiming it was not granted an opportunity to prepare a rebuttal. On the basis of the Human Service Center's motion contending it was not given an opportunity to prepare a rebuttal to I.K.'s argument under N.D.C.C. § 25–03.1–22, the trial court rendered its May 8, 2003, order. The record supports the claim of surprise. The district court did not abuse its discretion by vacating the April 28, 2003, order.

## III

[¶ 12] I.K. contends the district court erred in ordering her to "continue to take Seroquel until May 12, 2004[,] a period of one year, or until further order of the Court." I.K. argues this provision was included in the order even though none of the requirements of N.D.C.C. § 25–03.1–18.1 were followed, and the permissible duration of such an order was exceeded. Before a district court can order a person to be involuntarily treated with medication, four separate factors listed in N.D.C.C. § 25–03.1–18.1 must be proven by clear and convincing evidence. *Interest of B.D.,* 510 N.W.2d 629, 632 (N.D.1994). On appeal, the Human Service Center concedes there is no evidentiary basis to order involuntary treatment with prescribed medication. We, therefore, reverse that portion of the order.

## IV

[¶ 13] I.K. argues the district court erred in ordering continuing alternative treatment for her because she is not a "person requiring treatment" as defined in N.D.C.C. § 25–03.1–02(11).

[¶ 14] "The scope of our review 'is limited to a review of procedures, findings, and conclusions of the lower court.'" *Interest of H.G.,* 2001 ND 142, ¶ 3, 632 N.W.2d 458 (quoting *Interest of L.B.,* 452 N.W.2d 75, 77 (N.D.1990)). "The district court's decision is to be based upon clear and convincing evidence." *Id.* This Court treats the district court's finding of clear and convincing evidence that a person requires treatment as a finding of fact, and will not set it aside unless it is clearly erroneous. *Interest of J.K.,* 1999 ND 182, ¶ 10, 599 N.W.2d 337. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence this Court is left with a definite and firm conviction a mistake has been made. *Peterson v. Peterson,* 1999 ND 191, ¶ 6, 600 N.W.2d 851.

[¶ 15] "The burden of proof in commitment proceedings is on the petitioner to prove by clear and convincing evidence the respondent is a 'person requiring treatment.'" *Interest of H.G.,* 2001 ND 142, ¶ 4, 632 N.W.2d 458. "There is a presumption the respondent does not require treatment." *Id.* Section 25–03.1–02(11), N.D.C.C., defines "person requiring treatment" as:

a person who is mentally ill or chemically dependent, and there is a reasonable expectation that if the person is not treated there exists a serious risk of harm to that person, others, or property. "Serious risk of harm" means a substantial likelihood of:

a. Suicide, as manifested by suicidal threats, attempts, or significant depression relevant to suicidal potential;

b. Killing or inflicting serious bodily harm on another person or inflicting significant property damage, as manifested by acts or threats;

c. Substantial deterioration in physical health, or substantial injury, disease,

or death, based upon recent poor self-control or judgment in providing one's shelter, nutrition, or personal care; or

d. Substantial deterioration in mental health which would predictably result in dangerousness to that person, others, or property, based upon acts, threats, or patterns in the person's treatment history, current condition, and other relevant factors.

[¶ 16] Determining whether an individual is a "person requiring treatment" is a two-step process. *Interest of H.G.,* 2001 ND 142, ¶ 4, 632 N.W.2d 458. First, the court must find that the individual is mentally ill. Second, the court must find there is a reasonable expectation that if the person is not treated, there exists a serious risk of harm to himself, to others, or to property. *Id.*

[¶ 17] There is no dispute that I.K. is mentally ill. I.K. suffers from schizoaffective disorder, bipolar type. That a person is mentally ill, however, does not necessarily mean that he or she is a "person requiring treatment." *Interest of B.D.,* 510 N.W.2d 629, 631 (N.D.1994). To establish that a mentally ill person is a person requiring treatment, convincing evidence must be presented to show that left untreated, the person poses a serious risk of harm to himself, to others, or to property. *Id.*

[¶ 18] I.K. argues the Human Service Center has not proven by clear and convincing evidence that a serious risk of harm exists to herself, to others, or to property. She argues the testimony revealed that she is largely self-sufficient, cooperates in her treatment, and is of no harm to herself or to others.

[¶ 19] Two witnesses other than I.K. testified at the May 12, 2003, continuing treatment hearing: I.K.'s primary doctor,

Ed Yabut, and her case manager from the South Central Human Service Center, Kimberly Weyer. Dr. Yabut testified I.K. has an exaggerated belief that she has a urinary tract infection and she does not believe that she has responded to the treatment and fails to acknowledge there may be nothing wrong with her. Dr. Yabut also testified that after he examined I.K. because she complained of swelling in her hands, which would be a side effect of Seroquel, he found no objective evidence of any inflammation.

[¶ 20] Dr. Yabut testified I.K. suffers from schizoaffective disorder, which has a number of associated features. He testified, "Sometimes schizoaffective disorder patients who do not receive treatment are at increased risk for suicide, limitations in social contact, decompensation, becoming full blown psychotic, becoming depressed." He testified that the drug I.K. is currently taking, Seroquel, controls the symptoms I.K. could have were she not on the drug, and it also has a mood stabilizing component that reduces delusional thinking.

[¶ 21] Weyer testified about an incident in 1998 when she went to I.K.'s house and knocked on the door and there was no answer. She returned sometime later and knocked again, but there was still no answer. She testified that she then noticed I.K. lying in a recliner, and she proceeded to knock. She testified that I.K.'s phone was ringing but I.K. did not respond to either the knocking or the ringing, so she contacted the police. Weyer testified that a police officer had to kick the door in to gain entry to the house. She testified that I.K. was unresponsive until Weyer touched her arm, and then I.K. slowly responded.

[¶ 22] After hearing all of the evidence in the district court's May 12, 2003, treatment hearing, the court stated:

She is taking a very minimal dose, 50 milligrams per day of Seroquel. That's

at the direction of Dr. Yabut. She would like it reduced to 25 milligrams. That's really an issue between the doctor and the patient, and I don't have the authority to lower that and I can't order that.

She is in my mind very clear minded. She's articulate, seems to me that she knows what's going on. Some of those medical records that I looked at very briefly may be in conflict with what she believes, but it seems like she has a good understanding of her medical condition. I also get the feeling that she doesn't really have any opposition to going to Dr. Yabut. She doesn't have any opposition to taking Seroquel, she doesn't have any opposition to case management, delivery of medicine. She's got some concerns about money, but we all have that.

[¶ 23] We hold the district court was clearly erroneous in finding I.K. is a "person requiring treatment" as provided under section 25–03.1–02(11), N.D.C.C., and we reverse. Weyer's and Dr. Yabut's testimonies did not provide enough evidence to the district court to find that I.K. is a person requiring treatment. Dr. Yabut testified that in the five years that I.K. has been treated for her disorder, she has had some delusional behavior about her medical treatment, specifically regarding a urinary tract infection; however, he also testified that he was aware of one doctor in Fargo who had diagnosed her with such an infection. He testified she continues to insist that she has the infection. There was no testimony that her delusions would pose a danger to herself, to others, or to property if she were to go untreated. Dr. Yabut testified generally as to risks to persons with a disorder such as hers, but did not provide evidence specific to I.K. A general statement of what a patient with her disorder could experience is not enough to prove I.K. has a substantial likelihood of developing any of the associated risks and becoming a harm to herself, to others, or to property.

[¶ 24] Weyer's testimony of I.K.'s behavior of disassociating herself from the world around her was depictive only of how I.K. behaved in 1998. Weyer did not testify that I.K. would revert if she were untreated. Weyer's testimony was not descriptive of how I.K.'s present behavior might indicate that she would be a harm to herself, to others, or to property if left untreated. Conversely, Weyer's testimony discussed how I.K. has progressed since she first began treatments.

[¶ 25] No witness gave an expert opinion as to whether or not I.K. posed a serious risk of harm to herself, to others, or to property. The district court erred in finding I.K. in need of treatment. *See Interest of Rambousek*, 331 N.W.2d 548, 549–51 (N.D.1983).

V

[¶ 26] We affirm the district court order vacating its earlier order and reverse the district court's May 13, 2003, order for continuing treatment.

[¶ 27] GERALD W. VANDE WALLE, C.J., WILLIAM F. HODNY, S.J., CAROL RONNING KAPSNER, and WILLIAM A. NEUMANN, JJ., concur.

[¶ 28] The Honorable WILLIAM F. HODNY, Surrogate Judge, sitting in place of MARING, J., disqualified.