In the Interest of R.N.

Dennis B. KOTTKE, M.D., Petitioner and Appellee,

v.

R.N., Respondent and Appellant.

Civ. No. 940046.

Supreme Court of North Dakota.

March 10, 1994.

Rick L. Volk (argued), Asst. State's Atty., Bismarck, for petitioner and appellee.

Edwin W.F. Dyer, III (argued), Bismarck, for respondent and appellant.

MESCHKE, Justice.

R.N. appeals from an order continuing her involuntary mental-illness treatment for one year. We affirm.

This is R.N.'s fifth appeal to this court. See In Interest of R.N. (R.N. I ), 450 N.W.2d 758 (N.D.1990); In Interest of R.N. (R.N. II ), 453 N.W.2d 819 (N.D.1990); In Interest of R.N. (R.N. III ), 492 N.W.2d 582 (N.D. 1992). A fourth appeal was filed in October 1990 and later voluntarily dismissed. Most recently, we affirmed her involuntary commitment to the State Hospital in R.N. III. In the ten months between that decision and the expiration of that treatment order on September 30, 1993, R.N. was released twice for less-restrictive out-patient treatment and rehospitalized both times for dangerous behavior caused by her failure to take prescribed medicine. Her last hospitalization under this order occurred on September 7, 1993.

Rather than request an order under NDCC 25–03.1–31 continuing R.N.'s hospitalization after September 30, Dr. Kottke filed a new petition for involuntary commitment on October 1. Before the court could rule on the petition, R.N.'s condition stabilized and she was released from the hospital on October 7. Dr. Kottke changed his continuing-treatment recommendation to daily out-patient monitoring of R.N.'s medication instead of hospitalization. See NDCC 25–03.1–30(6). R.N. agreed to out-patient monitoring and

the court issued a 90–day initial order for alternative treatment. R.N. was readmitted to the State Hospital on October 25, 1993, for failure to take·her medicine. *See* NDCC 25–03.1–21(3). Once again, R.N.'s condition stabilized and she was released on November 17 under the same treatment conditions.

Before the initial treatment order expired, Dr. Kottke requested a one-year extension of the order under NDCC 25–03.1–21(4). The trial court found:

> [T]here is clear and convincing evidence to lead this Court to believe that [R.N.] is suffering from bipolar disorder which requires treatment, that she is currently doing extremely well in the alternative treatment program as ordered by this Court. And the Court does find, based on the clear and convincing evidence presented that there is a historical trend of [R.N.] not to take medication.... And therefore, in order to avoid the necessity of rehospitalization, this Court is going to grant the Petition and is going to order that the current alternative treatment plan, that's in place for [R.N.] at this point in time, shall remain in full force and effect for a period of one year from today's date....

R.N. appeals, claiming the order is not supported by sufficient evidence or findings of fact. We disagree.

In deciding whether to continue a person's treatment, "[t]he burden of proof is the same as in an involuntary treatment hearing." NDCC 25–03.1–31(1).

> Before a court can issue an order for an involuntary treatment, the petitioner must prove by clear and convincing evidence that the respondent is a person requiring treatment. NDCC § 25–03.1–19. *Kottke v. U.A.M.*, 446 N.W.2d 23 (N.D.1989). The determination that an individual is a "person requiring treatment" under the statutory definition is a two-step process: (1) the court must find that the individual is mentally ill, and (2) the court must find that there is a reasonable expectation that if the person is not hospitalized there exists a serious risk of harm to himself, others, or property. NDCC § 25–03.1–02[11]; *Kottke, supra.*

*In Interest of J.A.D.,* 492 N.W.2d 82, 83 (N.D.1992) (footnote omitted); *see also In Interest of J.S.,* 499 N.W.2d 604, 605 (N.D. 1993) (appeal of continued treatment order). Under NDCC 25–03.1–19, a person is presumed to not need treatment, and "the burden of proof in support of the petition is upon the petitioner."

■ R.N. first argues that we should treat the trial court's finding that R.N. requires treatment as a conclusion of law that is fully reviewable. In the related context of guardianships, we recently summarized our standard of review in commitment cases:

> Our precedents on the ... care, treatment, and commitment of mentally ill persons, identify the conflicts between the needs for protection and liberty in imposing involuntary controls. *See In Interest of R.N.,* 492 N.W.2d 582, 584 n. 2 (N.D.1992).... To balance the competing interests of protection and liberty in these situations, our decisions expect trial courts to use a clear and convincing evidentiary standard, while our appellate review under NDRCivP 52(a) uses a more probing "clearly erroneous" standard.

*Matter of Guardianship of Braaten,* 502 N.W.2d 512, 518 (N.D.1993). Under this standard of review, we do not replace the trial court's decision with our own. Instead, we will affirm an order for involuntary treatment unless it is induced by an erroneous view of the law or if we are firmly convinced it is not supported by clear and convincing evidence.

■ R.N. argues the trial court's oral findings are not sufficient. A court's findings and conclusions in an involuntary treatment case must be entered into the record, NDCC 25–03.1–20, and can be stated orally if recorded in open court. NDRCivP 52(a). A court's findings are sufficient if they "enable this court to understand the reasoning behind the court's decision." *Throndset v. L.L.S.,* 485 N.W.2d 775, 777 n. 2 (N.D.1992). An express finding on every detail is not required if the factual basis for the decision is fairly discernible by deduction or inference. *Pfliger v. Pfliger,* 461 N.W.2d 432, 436 (N.D.1990). We do not consider these find-

ings in a vacuum, but read them in the light of the entire record.

Although the court found that R.N. requires treatment, it did not expressly find she was mentally ill or posed a serious risk to herself or others. However, we do not ignore the fact the court was ruling on a petition to *continue* R.N.'s treatment. Since October, it had already ordered both her outpatient treatment and hospitalization for failure to take her medicine, each time finding that R.N. was mentally ill and if untreated would probably present a serious risk of danger to herself or others. This was the third time in three months the trial court found that R.N. required treatment. In light of these other recent orders by the same court, the factual reasons for continuing R.N.'s treatment are sufficiently expressed. Any technical shortcomings in these findings do not warrant reversal.

R.N. contends that even if these minimal findings are sufficient, they are not supported by clear and convincing evidence. We disagree.

A person must continue to be mentally ill to require continued treatment. NDCC 25–03.1–02(10) defines a "mentally ill person" as "an individual with an organic, mental, or emotional disorder which substantially impairs the capacity to use self-control, judgment, and discretion in the conduct of personal affairs and social relations."

█ R.N. has been treated as an outpatient by Dr. Samuelson since her last release from the State Hospital in November, 1993. He testified that she suffers from a chronic mental illness called bi-polar disorder. If untreated, her illness causes hyperactivity. He also testified that R.N. tends to quit taking her medicine because she lacks insight into her illness. This testimony clearly and convincingly shows that R.N. suffers from a mental illness impairing her judgment and self control.

To extend a person's treatment, it also must continue to be reasonable to expect "that if the person is not treated there exists a serious risk of harm to that person, others, or property." NDCC 25–03.1–02(11). "Serious risk of harm" includes a "[s]ubstantial

deterioration in mental health which would predictably result in dangerousness to that person, others, or property." NDCC 25–03.1–02(11)(d). The record in this this case clearly shows that R.N. predictably presents such a risk.

Dr. Samuelson testified that without treatment "her illness has a tendency to flair up again," causing a substantial deterioration in R.N.'s mental health that "may result in a rehospitalization." He said that a recurrence of her illness would also "involve her in situations that could be . . . of potential hazard to others," because "some of her behaviors have been interpreted by others as very threatening." Dr. Samuelson based his opinion on both personal observation of R.N. and her "past medical history."

This is not a case, as R.N. suggests, where the person would simply benefit from treatment. R.N.'s involuntary commitment last October was the thirteenth time she has been admitted to the State Hospital. The record in this case, including our prior opinions, shows that R.N. has been hospitalized for such dangerous behavior as drinking out of a ditch, driving erratically, and "flagging down cars." *R.N. II*, 453 N.W.2d at 821. This behavior is a result of deterioration in R.N.'s mental health caused by her failure to take medicine as directed. Although Dr. Samuelson agreed R.N. has improved since November, he concluded that she still remains a potential danger to herself and others if untreated.

R.N. argues that she is doing well now and no longer needs daily monitoring. However, R.N.'s current success "does not in itself imply that she no longer" requires treatment. *Matter of Guardianship of Renz*, 507 N.W.2d 76, 77 (N.D.1993). The history shows that her health has deteriorated several times before, despite a court order for daily medication monitoring. R.N. also complains that a court should not speculate that she may be a risk in the future based on her past treatment history. However, a court is entitled to consider what has happened in the past as relevant "prognostic" evidence of what is likely to occur in the future. *Matter of Guardianship of Renz*, 507 N.W.2d at 78; *see also* NDCC 25–03.1–02(11)(d) (patient's

history may be predictor of dangerousness to self or others). R.N.'s extensive treatment history, combined with Dr. Samuelson's opinion that R.N. would deteriorate and repeat such dangerous behavior if untreated, is clear and convincing evidence that she requires continued treatment.

The court's decision in this case is not perfect. More detailed findings should normally be given, and the details relied upon in the person's medical history should be expressed in the court's decision. However, in light of R.N.'s treatment history, the trial court's finding, that clear and convincing evidence supports her continued treatment, is not clearly erroneous. We affirm.

LEVINE and NEUMANN, JJ., RALPH J. ERICKSTAD, Surrogate Judge, and NORMAN J. BACKES, District Judge, concur.

RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of VANDE WALLE, C.J., and NORMAN J. BACKES, District Judge, sitting in place of SANDSTROM, J., disqualified.