640 N.W.2d 733 (2002)
2002 ND 50
In the Interest of J.D.
Nadeem Haider, M.D., Petitioner and Appellee,
v.
J.D., Respondent and Appellant.
No. 20020049.
Supreme Court of North Dakota.
March 12, 2002.
*735 Robin Huseby, State's Attorney, Valley City, for petitioner and appellee.
Jodie Koch Scherr, Valley City, for respondent and appellant.
VANDE WALLE, Chief Justice.
[¶ 1] J.D. appealed from an order continuing treatment and an order to treat involuntarily with medication. We affirm in part, reverse in part, and remand for a new hearing on whether a less restrictive alternative treatment is appropriate, and whether forced medication is the least restrictive form of intervention.
[¶ 2] J.D. is a twenty-four year old man who, since 1999, has lived with his uncle on a farm near Valley City, North Dakota. J.D.'s uncle grew concerned about J.D's mental health and physical well being. This concern prompted J.D.'s uncle to call the Barnes County Sheriff's Office for assistance on January 29.
[¶ 3] J.D.'s uncle explained his concern to the Barnes County Sheriff's Deputies who responded to his call for assistance. J.D.'s uncle told the deputies J.D. refused to live in the farm house during the winter months this year, and remained, instead, in his trailer. J.D.'s uncle said he had tried to provide electricity and heat to the trailer, but J.D. physically stopped J.D.'s uncle and refused this assistance. J.D.'s uncle told the deputies J.D. would sit in either his unheated trailer or his automobile for long periods of time. J.D.'s uncle explained to the deputies that J.D.'s mental status had gone down hill and J.D. was becoming more paranoid and more distant from the family.
[¶ 4] When the deputies arrived at the farm J.D. was sitting in his automobile with the engine off. J.D. was dressed appropriately for the weather, however, wearing many layers of winter clothing. The deputies asked J.D. a few questions, but he would not answer the questions. The deputy who testified at the preliminary hearing testified J.D. seemed paranoid.
[¶ 5] The deputies decided, based on the already cold weather, the still dropping temperatures, and J.D.'s refusal to seek appropriate shelter, that he was a danger to himself. Over J.D.'s objections and despite his resistance, the deputies placed J.D. in custody and transported him to the State Hospital in Jamestown. J.D. was detained in the State Hospital as provided in N.D.C.C. § 25-03.1-25.
[¶ 6] On January 31, 2002, a preliminary hearing was conducted and after hearing evidence from one of the deputies and reading a report from the State Hospital, the district court found it was probable J.D. was a person requiring treatment. Accordingly, the district court ordered J.D. be returned to the State Hospital for fourteen days.
[¶ 7] On February 12, 2002, a treatment hearing was conducted by the district court. J.D.'s uncle testified and again related those observations and concerns he had reported to the deputies on January 29. Additionally, William Pryatel, M.D., testified via telephone.
[¶ 8] Dr. Pryatel testified that J.D. resisted efforts to examine him, which made it difficult to specify exactly the nature of J.D's condition. Nonetheless, Dr. Pryatel was able to diagnose J.D. with a psychotic disorder, but was unable to otherwise specify the nature of the condition. Also, Dr. Pryatel testified because of J.D.'s mental condition J.D. posed a threat of harm to himself, because in such a mental condition *736 J.D. would continue to refuse heat and electricity.
[¶ 9] Further, Dr. Pryatel reported J.D. had not been taking his medication voluntarily and would only eat if he was given tasks to perform so that he would feel as though he was earning his keep.
[¶ 10] Dr. Pryatel recommended that J.D. continue to be involuntarily hospitalized and medicated. Moreover, Dr. Pryatel testified this was the least restrictive course of treatment available to J.D., because of J.D.'s refusal to voluntarily comply with his treatment plan thus far. J.D. did not testify, nor did he call any witnesses on his behalf.
[¶ 11] The district court found J.D. had been diagnosed with a psychotic disorder, that he was a risk to himself because he refused appropriate shelter, and that he had not been compliant with his treatment orders thus far and therefore there was no less restrictive treatment option available.
[¶ 12] As a result of these findings of fact the district court concluded the statutory factors of N.D.C.C. § 25-03.1-18.1 had been satisfied by the evidence. The district court ordered J.D. be committed to the State Hospital for a period of not more than 90 days and be medicated. J.D.'s appeal is before this Court as provided in N.D.C.C. § 25-03.1-29; N.D.R.App.P. 2.1(a).

I
[¶ 13] Our review of an appeal under N.D.C.C. ch. 25-03.1 is "limited to a review of the procedures, findings, and conclusions of the lower court." In the Interest of J.S., 1998 ND 92, ¶ 13, 578 N.W.2d 91 (quoting N.D.C.C. § 25-03.1-29). "To balance the competing interests of protecting a mentally ill person and of preserving that person's liberty, our standards of decision require trial courts to use a clear and convincing standard of proof while we use a more probing `clearly erroneous' standard of review." In the Interest of J.S., 530 N.W.2d 331, 333 (N.D.1995). As we have explained in the past, "we will affirm an order for involuntary treatment unless it is induced by an erroneous view of the law or if we are firmly convinced it is not supported by clear and convincing evidence." In Interest of R.N., 513 N.W.2d 370, 371 (N.D.1994).
[¶ 14] Section 25-03.1-02(11), N.D.C.C., defines a "person requiring treatment" as:
a person who is mentally ill or chemically dependent, and there is a reasonable expectation that if the person is not treated there exists a serious risk of harm to that person, others, or property.
[¶ 15] Therefore N.D.C.C. § 25-03.1-02(11) creates a two-part test to determine if a person requires treatment. First, the person must be shown to have a mental illness. See N.D.C.C. § 25-03.1-02(11). Second, it must be shown that the mentally ill person, if untreated, poses a serious risk to him or herself, others, or property. See id.
[¶ 16] J.D. concedes the district court found him to be mentally ill under the first prong of the two-step process and, while not agreeing with this finding, J.D. does not contest it on appeal. Rather, J.D. asserts even if he is mentally ill he does not require treatment, because he does not pose a serious risk of harm to anything or anyone including himself.
[¶ 17] The legal meaning of the phrase "serious risk of harm" is defined by N.D.C.C. § 25-03.1-02(11) to include a likelihood of any of the following:
a. Suicide, as manifested by suicidal threats, attempts, or significant depression relevant to suicidal potential; *737 b. Killing or inflicting serious bodily harm on another person or inflicting significant property damage, as manifested by acts or threats;
c. Substantial deterioration in physical health, or substantial injury, disease, or death, based upon recent poor self-control or judgment in providing one's shelter, nutrition, or personal care; or
d. Substantial deterioration in mental health which would predictably result in dangerousness to that person, others, or property, based upon acts, threats, or patterns in the person's treatment history, current condition, and other relevant factors.
[¶ 18] Only one expert, Dr. Pryatel, testified at the treatment hearing. Dr. Pryatel was unambiguous in his opinion; he testified that because of J.D.'s mental illness he would continue to refuse appropriate shelter and was thus a threat to himself. The only other testimony before the district court was that of J.D.'s uncle, who also testified that he was worried J.D. would harm himself by refusing heat and electricity. In fact J.D.'s uncle was so worried about J.D. that he called the Barnes County Sheriff's Office for assistance, which was the "hardest thing" he had ever had to do. The testimony of Dr. Pryatel and J.D.'s uncle supports the district court's findings, particularly under subsection (c) of N.D.C.C. § 25-03.1-02(11).
[¶ 19] In light of the evidence before the district court, even under heightened scrutiny, the district court was not clearly erroneous in finding J.D. was a person requiring treatment.

II
[¶ 20] A patient has the right to the least restrictive conditions necessary to achieve the treatment purposes. N.D.C.C. § 25-03.1-40(2). "In some cases, a reporting doctor may reasonably conclude that less restrictive alternatives to hospitalization simply do not exist." In the Interest of J.S., 545 N.W.2d 145, 148 (N.D.1996). Whether or not this is such a case, there is insufficient evidence on this issue. The district court reasoned J.D. should be held against his will in an in-patient treatment program because he was not cooperating with the in-patient treatment program he was in currently, and because J.D. was not voluntarily taking his medication.
[¶ 21] There was no discussion on the record, however, of what, if any, alternative forms of treatment were available. Without further evidence that less restrictive conditions were considered, as required by statute, we cannot affirm the district court's order as the least restrictive course of treatment appropriate for J.D.
[¶ 22] The same is true with regard to the issue of forced medication. Section 25-03.1-18.1(3), N.D.C.C., requires certification from the treating psychiatrist and another licensed physician or psychiatrist not involved in the case that, among other things, the "prescribed medication is the least restrictive form of intervention necessary to meet the treatment needs of the patient."
[¶ 23] As we noted in State v. Nording, 485 N.W.2d 781, 787 (N.D.1992), N.D.C.C. § 25-03.1-18.1 "is designed to safeguard a patient's right to be free of forced medication unless the prescribed medication is necessary to effectively treat the patient, unless the medication is the least restrictive form of intervention available for the patient's treatment, and unless the benefits of the medication outweigh its known risks to the patient."
[¶ 24] Without further explanation, mere conclusory statements by the treating psychiatrist and other physician *738 are not helpful in determining whether a court should authorize involuntary treatment with prescribed medications. Compare, e.g., In re B.D., 510 N.W.2d 629, 633 (N.D.1994) (discussing testimony of a psychiatrist concerning need for forced medication).
[¶ 25] Without further evidence that other forms of intervention were considered, we cannot affirm the district court's order for medication as the least restrictive form of intervention necessary to meet J.D.'s treatment needs.
[¶ 26] Accordingly we reverse and remand for further findings on alternative forms of treatment and intervention that may be available to J.D.
[¶ 27] The order is affirmed in part and reversed and remanded in part.
[¶ 28] SANDSTROM, NEUMANN, MARING, and KAPSNER, JJ., concur.