2006 ND 218

**In the Interest of B.L.S.**

**Rick Eckroth, Petitioner and Appellee**

v.

**B.L.S., Respondent and Appellant.**

**No. 20060234.**

Supreme Court of North Dakota.

Oct. 20, 2006.

Brian D. Grosinger (argued), Assistant State's Attorney, Mandan, ND, for petitioner and appellee.

Greg I. Runge (argued), Bismarck, ND, for respondent and appellant.

KAPSNER, Justice.

[¶ 1]  B.L.S. appeals a district court order, involuntarily committing him to the North Dakota State Hospital ("State Hospital") and allowing him to be treated involuntarily with prescription medication. We affirm in part and reverse in part.

I

[¶ 2]  B.L.S., a 44–year–old man diagnosed with paranoid schizophrenia, was incarcerated in the Morton County Correctional Center.  Staff at the correctional center noticed B.L.S.'s behavior progressively worsen during his incarceration. After three months, a correctional officer petitioned the district court to involuntarily commit B.L.S. to the State Hospital. The petition alleged that B.L.S. had washed his undergarments in a toilet in which he had just defecated; taken three-hour showers; stood in the toilet, flooding his cell; refused his medications; wrote pages of incoherencies; chronically masturbated; had extreme hygiene problems; had a violent disposition; and was delusional.  The officer believed that hospitalization was necessary to prevent B.L.S. from injuring himself.

[¶ 3]  The court held a preliminary hearing and a treatment hearing to decide whether B.L.S. was mentally ill and whether he required treatment.  B.L.S.'s psychiatrist, Dr. William Pryatel, sought a court order to involuntarily treat B.L.S. with medication.  Dr. Pryatel filed a Request to Treat with Medication ("Request") on July 7, 2006, asking the court to authorize the forcible use of four medications:  Risperdal, Haloperidol, Geodon, and Olanzapine.  As required by N.D.C.C. § 25–03.1–18.1(1)(a),  another physician, Dr. Diana Robles, certified that the pre-

scriptions were "clinically appropriate and necessary to effectively treat [B.L.S.]" and that there was a reasonable expectation of a "serious risk of harm" if he was not treated as requested. Dr. Pryatel also submitted a Notice of Medication ("Notice I"), dated July 11, 2006, indicating that several additional medications had been given to B.L.S. prior to the hearing. Notice I provided that "[Sodium] Polystyrene, Amlodipine, Furosemide, Enalapril, Amitriptyline, Nambumetone, and Allopurinol" had been given to B.L.S.

[¶ 4] At both proceedings, the court appointed counsel for B.L.S., but he sought to represent himself. The court allowed him to do so, but did not excuse the appointed counsel. The court did not determine in either proceeding, on the record, that B.L.S. knowingly, intelligently, and voluntarily waived the right to counsel. At the treatment hearing's conclusion, the court found, by clear and convincing evidence, that B.L.S. was mentally ill, required treatment, and that forced medication was necessary. The court order specifically authorized the use of "Risperdal, Haloperidol, Geodon, [and] Olanzapine."

[¶ 5] B.L.S. appealed and, on August 28, 2006, we reversed, reaching only the waiver of counsel issue. *Interest of B.L.S.*, 2006 ND 188, ¶ 13, 721 N.W.2d 50. We remanded the case for new proceedings on the petition. *Id.*

[¶ 6] On September 5, 2006, the district court held a second treatment hearing. B.L.S. again sought to represent himself. The court, however, did not approve his request. On the record, it engaged in a colloquy concerning B.L.S.'s competence to waive counsel, ruling he did not appreciate the risks of self-representation and that the appointed counsel, Greg Runge, would represent him.

[¶ 7] At the second treatment hearing, Dr. Pryatel presented another Notice of Medication ("Notice II"), dated September 5, 2006, indicating that B.L.S. had been given six medications, including: "Haloperidol Deconate, Haloperidol, Furosemide, Enalapril (Vasotec), Allopurinol, [and] Amlodipine (Norvasc)." Testimony at the second hearing disputed whether all of the listed medications had actually been given. Dr. Pryatel did not file a new Request or amend his previous Request. He testified that Haloperidol and Haloperidol Deconate were psychotropic medications used to treat B.L.S.'s schizophrenia, but the rest of the medications listed in Notice II were used to treat B.L.S.'s blood pressure, high potassium levels, and gout. B.L.S.'s counsel extensively cross-examined Dr. Pryatel on the side effects of the four psychotropic medications noticed in the Request, "Risperdal, Haloperidol, Geodon, [and] Olanzapine."

[¶ 8] At the hearing's conclusion, the court found, by clear and convincing evidence, that B.L.S. was mentally ill, required treatment, and that forced medication was necessary. Accordingly, the district court committed B.L.S. to the State Hospital for the remainder of the 90 days imposed by the original treatment order. The court also authorized the use of "Risperdal, Haloperidol, Geodon, Olanzapine, Haloperidol Deconate, ... Furosemide, Enalapril, Allopurinol, [Amlodipine], [and] Sodium [Polystyrene]."

II

[¶ 9] On appeal, B.L.S. argues that the petitioner failed to establish, by clear and convincing evidence, that B.L.S. was mentally ill, required treatment, and that forced medication was necessary. He also argues his due process rights were violated because the district court authorized the use of more medications than were

originally noticed in Dr. Pryatel's Request. The petitioner argues there was sufficient evidence to determine that B.L.S. was a mentally ill person requiring treatment, and the district court properly authorized forced medication.

### III

[¶ 10] Our review of an appeal under N.D.C.C. ch. 25–03.1 is "limited to a review of the procedures, findings, and conclusions of the trial court." *Interest of D.A.*, 2005 ND 116, ¶ 11, 698 N.W.2d 474. We review the findings of the district court under the more probing clearly erroneous standard of review. *Id.* A finding of fact is clearly erroneous if "it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence this Court is left with a definite and firm conviction 'it is not supported by clear and convincing evidence.' " *Id.* (quoting *Interest of J.D.*, 2002 ND 50, ¶ 13, 640 N.W.2d 733 and *Interest of R.N.*, 513 N.W.2d 370, 371 (N.D.1994)).

[¶ 11] B.L.S. argues there was no clear and convincing evidence to support the finding that he is "mentally ill" and a "person in need of treatment." The statute defines "mentally ill person," in pertinent part, to include "individual[s] with an organic, mental, or emotional disorder which substantially impairs the capacity to use self-control, judgment, and discretion in the conduct of personal affairs and social relations." N.D.C.C. § 25–03.1–02(11) (2005). Section 25–03.1–02(12)(b)–(c), N.D.C.C., provides that a "person requiring treatment" is one who:

is mentally ill ... and there is a reasonable expectation that if the person is not treated there exists a serious risk of harm to that person, others, or property. "Serious risk of harm" means a substantial likelihood of:

. . . .

b. Killing or inflicting serious bodily harm on another person or inflicting significant property damage, as manifested by acts or threats;

c. Substantial deterioration in physical health, or substantial injury, disease, or death, based upon recent poor self-control or judgment in providing one's shelter, nutrition, or personal care.

A Morton County correctional officer testified that B.L.S. had engaged in bizarre activities such as washing his undergarments and hands in an unflushed toilet. He also testified that B.L.S. had extreme hygiene issues, indicating that he had "poor self-control or judgment in providing [for his] ... personal care." This behavior supports the district court's finding of mental illness.

[¶ 12] Dr. Pryatel testified that he evaluated B.L.S. and diagnosed him with schizophrenia. B.L.S. has been hospitalized at the State Hospital approximately ten times in the last fifteen years. All of B.L.S.'s prior diagnoses have been consistent with Dr. Pryatel's most recent evaluation. Dr. Pryatel also testified B.L.S. has been engaging in sexually aggressive and predatory behavior while at the State Hospital. B.L.S. had cornered female staff and had exposed himself. Dr. Pryatel stated this behavior reinforces the necessity for treatment because B.L.S. is delusional in that he believes the female staff members "want him sexually." This behavior also supports the court's finding that B.L.S. manifested threatening behavior while at the State Hospital. Finally, Dr. Pryatel testified B.L.S. needs medical treatment in order to adequately care for his physical health. Although Dr. Pryatel testified that some of his medical conditions had improved under treatment, he indicated they remained life-threatening if

left untreated. *Interest of M.M.*, 2005 ND 219, ¶ 11, 707 N.W.2d 78 (holding that due to mental illness, the respondent was not able to make rational medical decisions, posing a "serious risk of harm" if left untreated). B.L.S.'s conduct and serious medical conditions support the determination that B.L.S. is mentally ill and a person in need of treatment. *Cf. Interest of P.B.*, 2005 ND 201, ¶ 9, 706 N.W.2d 78 (citing *Interest of K.G.*, 2005 ND 156, ¶ 7, 703 N.W.2d 660) (noting that past conduct can be an indication of future risks in mental health appeals).

[¶ 13] Based on the record, there was sufficient evidence to support the court's findings. Therefore, the district court's findings that B.L.S. is mentally ill and requiring treatment were not clearly erroneous and we will not disturb them on appeal. *M.M.*, 2005 ND 219, ¶ 11, 707 N.W.2d 78; *see also* N.D.R.Civ.P. 52(a).

### IV

[¶ 14] B.L.S. argues that there was not clear and convincing evidence to show that forced medication was necessary and appropriate.

[¶ 15] In *D.A.*, we discussed the statutory requirements for the involuntary use of prescription medication. 2005 ND 116, ¶ 10, 698 N.W.2d 474. There, we stated:

Under N.D.C.C. § 25–03.1–18.1(1)(a), before a trial court authorizes involuntary treatment with prescribed medication, the treating psychiatrist and another licensed physician must certify, and the court must find by clear and convincing evidence:

(1) That the proposed prescribed medication is clinically appropriate and necessary to effectively treat the patient and there is a reasonable expectation that if the person is not treated as proposed there exists a ser-ious risk of harm to that person, other persons, or property;

(2) That the patient was offered that treatment and refused it or that the patient lacks the capacity to make or communicate a responsible decision about that treatment;

(3) That prescribed medication is the least restrictive form of intervention necessary to meet the treatment needs of the patient; and

(4) That the benefits of the treatment outweigh the known risks to the patient.

In making its determination, the court must consider all relevant evidence presented at the treatment hearing, including:

(1) The danger the patient presents to self or others;

(2) The patient's current condition;

(3) The patient's treatment history;

(4) The results of previous medication trials;

(5) The efficacy of current or past treatment modalities concerning the patient;

(6) The patient's prognosis; and

(7) The effect of the patient's mental condition on the patient's capacity to consent.

N.D.C.C. § 25–03.1–18.1(2)(a); *D.A.*, 2005 ND 116, ¶ 10, 698 N.W.2d 474.

[¶ 16] The law also requires the court to inquire whether the respondent has had a sufficient opportunity to prepare for the forced medication hearing. N.D.C.C. § 25–03.1–18.1(1)(b). The Request to Treat With Medication provides the notice of the proposed course of treatment with medication under N.D.C.C. § 25–03.1–18.1. If the respondent has not had a sufficient opportunity to prepare to address the medication issue, the statute authorizes the court to grant a continuance for up to seven days so that an independent expert examiner can evaluate the respondent. *Id.*

[¶ 17] The district court found, by clear and convincing evidence, that involuntary treatment with medication was required. In ordering the medication, the court made specific findings mirroring the statutory factors contained in N.D.C.C. § 25–03.1–18.1.

[¶ 18] As required by section 25–03.1–18.1, another physician, Dr. Diana Robles, certified that the use of Risperdal, Haloperidol, Geodon, and Olanzapine was clinically appropriate and necessary. She further certified that there is a reasonable expectation that, if not treated with these medications, his condition creates a serious risk of harm to his person and that he was offered the appropriate medication, but he refused it.

[¶ 19] Based on this record, there was ample evidence to support the district court's order concerning the use of Risperdal, Haloperidol, Geodon, and Olanzapine. Therefore, the court's finding that forced treatment with medications named in the Request was not clearly erroneous. *M.M.*, 2005 ND 219, ¶ 16, 707 N.W.2d 78; *see also* N.D.R.Civ.P. 52(a).

### V

[¶ 20] B.L.S. argues that his due process rights were violated because he did not receive prior notice of all of the medications authorized by the district court and because the involuntary treatment with medication statute is limited to "mental illness" medication. Since the additional medications ordered by the district court were not certified by an independent physician as required by N.D.C.C. § 25–03.1–18.1(1)(a), we hold that B.L.S.'s statutory rights were violated with respect to the medications not listed in the Request.

### A

[¶ 21] B.L.S. argues that he did not receive proper notice of all the medications authorized in the court order. Dr. Pryatel's Request to treat B.L.S. with medication specifically requests authorization to use Risperdal, Haloperidol, Geodon, and Olanzapine. At the second treatment hearing, however, the district court ordered additional medications used to treat B.L.S.'s physical health needs, including: "Furosemide, Enalapril, Allopurinol, [Amlodipine], [and] Sodium [Polystyrene]." Dr. Pryatel indicated that treatment for B.L.S.'s high blood pressure and kidney function was necessary, or B.L.S. "could die."

[¶ 22] Section 25–03.1–18.1, N.D.C.C., requires that respondents be afforded adequate notice and the opportunity to prepare to address the involuntary treatment with medication. *Interest of B.D.*, 510 N.W.2d 629, 634 (N.D.1994). Generally, the request for authorization for treatment must specify the prescribed medication, at least by generic description, which it seeks to involuntarily administer. *Id.* The statute also requires a second physician, not involved in current treatment or diagnosis, to review the clinical appropriateness and necessity of the proposed medication. N.D.C.C. § 25–03.1–18.1(1)(a).[1]

---

1. Nothing in this opinion prevents the short-term use of prescribed medication under N.D.C.C. § 25–03.1–24, which provides:

    State hospital or treatment facility personnel may treat a patient with prescribed medication or a less restrictive alternative if, in the opinion of a psychiatrist or physician, these treatments are necessary to prevent bodily harm to the patient or others or to prevent imminent deterioration of the respondent's physical or mental condition and there is not time to obtain a court order. This chapter does not prohibit a hospital from rendering emergency medical care without the need for consultation, if in the exercise of sound medical judgment

[¶ 23] In this case, B.L.S. was not afforded adequate statutory notice of the additional medications, the court failed to inquire whether B.L.S. had been given the opportunity to prepare to address the additional medications it ordered, and the record does not disclose that a second physician had certified the clinical appropriateness and necessity of the additional medications. Accordingly, we reverse the district court with respect to the order permitting treatment with medications that were not certified by Dr. Robles and not included in Dr. Pryatel's original Request to treat B.L.S. with medication.

## B

[¶ 24] B.L.S. argues that some of the medications ordered by the district court are unauthorized under N.D.C.C. § 25–03.1–01 because they are used to treat his physical ailments. B.L.S. argues that prescription medication ordered under N.D.C.C. § 25–03.1–18.1 must be limited to psychotropic medications used to treat mental illness. His argument is without merit.

[¶ 25] Section 25–03.1–18.1, N.D.C.C., allows the use of prescription medication to prevent a "serious risk of harm to that person, others, or property" and requires that the medication be "clinically appropriate and necessary to effectively treat the patient...." N.D.C.C. § 25–03.1–02 defines "serious risk of harm" to include the "substantial deterioration [of the respondent's] physical health." *Id.* No language in either statute limits the types of medication a physician or psychiatrist can request, nor does

B.L.S. provide any legal support beyond his bare assertion. To the contrary, some provisions in chapter 25–03.1 specifically authorize the use of medication to treat physical infirmities. *E.g.*, N.D.C.C. § 25–03.1–16 (emergency provision authorizing medication "to prevent imminent deterioration of the respondent's physical or mental condition"). Therefore, had the additional medications ordered by the district court been included in the Request and certified by a second physician as clinically appropriate and necessary, the court would not have erred in authorizing their use.

## VI

[¶ 26] The district court's finding that B.L.S. was mentally ill and required treatment was not clearly erroneous. The district court did not err in authorizing the use of the four medications specifically noted on Dr. Pryatel's Request to treat B.L.S. with medication. The court did err, however, when it authorized the use of the additional medication not listed in the Request and not certified as clinically necessary by a second physician. We affirm the district court's order with respect to finding B.L.S. mentally ill, in need of treatment, and authorizing the forcible use of four prescription medications, Risperdal, Haloperidol, Geodon, and Olanzapine, but we reverse the district court's order to the extent that it exceeds the Request to Treat with Medication.

[¶ 27] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ., WILLIAM F. HODNY, S.J., concur.

---

that care is immediately necessary and delay would endanger the life of or adversely and substantially affect the health of the patient.
We do, however, emphasize the temporary nature of N.D.C.C. § 25–03.1–24. Treatment with prescribed medication under this section

should not continue beyond a reasonable time in which a court order could be obtained. *See also* N.D.C.C. § 25–03.1–16 (allowing emergency treatment with medication to prevent bodily harm to the respondent or others or to prevent imminent deterioration of the respondent's physical or mental condition).

[¶ 28] The Honorable WILLIAM F. HODNY, S.J., sitting in place of SANDSTROM, J., disqualified.