2017 ND 123

**IN the INTEREST OF F.M.G.**

**Raymond Dingeman, Petitioner and Appellee**

v.

**F.M.G., Respondent and Appellant**

**No. 20170136**

Supreme Court of North Dakota.

Filed 5/16/2017

Brian L. Johnson, Assistant State's Attorney, Bismarck, N.D., for petitioner and appellee.

Donald Sauviac, Jr. (argued) and Steven Balaban (appeared), Bismarck, N.D., for respondent and appellant.

McEvers, Justice.

[¶ 1] F.M.G. appeals the district court's order authorizing involuntary treatment with prescribed medication. F.M.G. argues the district court erred in granting the request to treat her with prescribed medications, because the proper medical providers did not testify at the hearing under N.D.C.C. § 25–03.1–18.1(1)(a), and the mandatory certification requirements under N.D.C.C. § 25–03.1–18.1(1)(a)(2) were not met. We conclude N.D.C.C. § 25–03.1–18.1(1)(a) does not require both treating and non-treating physicians to testify at the hearing, and F.M.G. did not adequately raise the issue of whether the form used to request involuntary treatment with medication met the certification requirements under N.D.C.C. § 25–03.1–18.1(1)(a)(2) before the district court. Therefore, we affirm the district court's order.

I

[¶ 2] On January 10, 2017, the State petitioned to involuntarily commit F.M.G. Following a preliminary hearing on January 13, 2017, the district court found F.M.G. was a mentally ill person requiring treatment and ordered commitment with the Sanford hospital in Bismarck, North Dakota. After a treatment hearing on January 27, 2017, F.M.G. was transferred to the North Dakota State Hospital. On February 7, 2017, Dr. Eduardo Yabut, one of F.M.G.'s treating psychiatrists at the State Hospital, filed a signed "Request to Treat with Medication." Dr. Clark Herniman also signed the request as a medical professional not involved in the current diagnosis or treatment of F.M.G. The request was submitted on a form stating:

The patient is a person requiring treatment and the proposed medication, (identify each medication)

(Risperidone, Haloperidol, Paliperidone, Olanzapine, Aripiprazole) is clinically appropriate and necessary to effectively treat the patient.

( )　The patient was offered the treatment and refused it

or

( )　The patient lacks the capacity to make or communicate a responsible decision about the treatment with medication.

The proposed medication is the least restrictive form of intervention necessary to meet the treatment needs of the patient.[ ]

The benefits of the treatment outweigh the known risks to the patient.

[¶ 3] The form contained boxes to check regarding the refusal of medication and the capacity to make a responsible decision about the treatment with medication. Neither box was checked, and the form was not dated. Attached to the form was a letter dated February 3, 2017, signed by Dr. Yabut. In his letter, Dr. Yabut stated "[F.M.G.] was medication noncompliant." The letter continued, "[F.M.G.] remains medication noncompliant. Thus, *we* are petitioning the court for involuntary medication so she can finally be treated. The medications that *we* are going for are Haloperidol, Risperidone, Paliperidone, Olanzapine and Aripiprazole." (Emphasis added.)

[¶ 4] On March 6, 2017, a hearing was held. The State called Dr. William Pryatel, another of F.M.G.'s treating physicians, to testify regarding the request to involuntarily treat F.M.G. with medication. Dr. Pryatel testified he was F.M.G.'s psychiatrist, but he was on vacation in early February, and was aware Dr. Yabut and Dr. Herniman signed the request to treat with medication in his absence. Both the State and the district court questioned Dr. Pryatel as to the statutory requirements under N.D.C.C. § 25–03.1–18.1. Dr. Pryatel testified each requirement under N.D.C.C. § 25–03.1–18.1 had been met in F.M.G.'s case.

[¶ 5] At the close of the State's argument, F.M.G. moved for a "directed verdict" on the grounds the requirements under N.D.C.C. § 25–03.1–18.1(1)(a) had not been met. Specifically, F.M.G. argued the State failed to call a doctor not involved in her treatment or diagnosis to testify and, therefore, the State did not meet the "requisite" under N.D.C.C. § 25–03.1–18.1(1)(a). The district court denied F.M.G.'s motion. The district court found the requirements under N.D.C.C. § 25–03.1–18.1 had been met and granted Dr. Yabut's request to treat F.M.G. with medication. F.M.G. filed this expedited appeal.

II

■ [¶ 6] F.M.G. argues the district court erred in granting Dr. Yabut's request to treat her with medication because the proper medical providers under N.D.C.C. § 25–03.1–18.1(1)(a) were not called to testify at the hearing, and the certification requirements under N.D.C.C. § 25–03.1–18.1(1)(a)(2) were not met.

■ [¶ 7] At the hearing, F.M.G. moved for a "directed verdict." "A directed verdict is granted as a matter of law and is fully reviewable on appeal." *Knoff v. Am. Crystal Sugar Co.*, 380 N.W.2d 313, 318 (N.D. 1986) (superseded by statute on other grounds). However, F.M.G. improperly moved for a directed verdict in a bench trial. *See Larson v. Unlimited Bus. Exch. of N.D., Inc.*, 330 N.W.2d 518, 520–21 (N.D. 1983) ("A motion for a directed verdict ... is not applicable to a case tried without a jury"). Although F.M.G. used inapplicable phrasing, we understand the motion was a motion to dismiss the request for involuntary treatment with medi-

cation under N.D.R.Civ.P. 41(b). In reviewing a district court's ruling on a N.D.R.Civ.P. 41(b) motion, this Court uses the clearly erroneous standard under N.D.R.Civ.P. 52(a). *Shark v. Thompson*, 373 N.W.2d 859, 867–68 (N.D. 1985).

[¶ 8] This Court's review of an appeal from a mental health hearing is well-established:

> Our review of an appeal under N.D.C.C. ch. 25–03.1 is "limited to a review of the procedures, findings, and conclusions of the trial court." *Interest of D.A.*, 2005 ND 116, ¶ 11, 698 N.W.2d 474. We review the findings of the district court under the more probing clearly erroneous standard of review. *Id.* A finding of fact is clearly erroneous if "it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence this Court is left with a definite and firm conviction 'it is not supported by clear and convincing evidence.'" *Id.* (quoting *Interest of J.D.*, 2002 ND 50, ¶ 13, 640 N.W.2d 733 and *Interest of R.N.*, 513 N.W.2d 370, 371 (N.D.1994)).

*In re B.L.S.*, 2006 ND 218, ¶ 10, 723 N.W.2d 395.

[¶ 9] Section 25–03.1–18.1(1)(a), N.D.C.C., governs court-authorized involuntary treatment with medication, providing:

> Upon notice and hearing, a treating psychiatrist may request authorization from the court to treat an individual under a mental health treatment order with prescribed medication. The request may be considered by the court in an involuntary treatment hearing. As part of the request, the treating psychiatrist and another licensed physician, physician assistant, psychiatrist, or advanced practice registered nurse not involved in the current diagnosis or treatment of the patient shall certify.

Section 25–03.1–18.1(1)(a)(2), N.D.C.C., goes on to require the proper medical provider to certify "[t]hat the patient was offered that treatment and refused it or that the patient lacks the capacity to make or communicate a responsible decision about that treatment."

[¶ 10] The purpose of N.D.C.C. ch. 25–03.1 is "to ensure that mentally ill persons, who present a serious risk of harm to themselves or others, obtain appropriate treatment while their due process rights are protected." *State v. Nording*, 485 N.W.2d 781, 786 (N.D. 1992) (citing *Interest of Nyflot*, 340 N.W.2d 178, 182 (N.D. 1983)). Section 25–03.1–18.1(1)(a), N.D.C.C., protects a mentally ill person's due process rights by providing them notice and a hearing when a request for authorization to treat with medication is sought. The party seeking court authorization must give notice they are seeking to treat the mentally ill person with prescribed medication, and "[a] request to treat with prescribed medication requires two signatures." *Interest of G.A.S.*, 2016 ND 136, ¶ 6, 881 N.W.2d 615; *see also* N.D.C.C. § 25–03.1–18.1(1)(a). One signature must be from the patient's treating physician and one from another medical professional not involved in the patient's current diagnosis or treatment. *Id.*

[¶ 11] F.M.G. does not argue the district court erred in finding Dr. Pryatel provided clear and convincing evidence through his testimony at the hearing that F.M.G. meets the criteria under N.D.C.C. § 25–03.1–18.1(1)(a)(1)–(4). The only argument made at the hearing was the proper medical providers under N.D.C.C. § 25–03.1–18.1(1)(a) were not called to testify at the hearing, therefore the requirements under N.D.C.C. § 25–03.1–18.1(1)(a)(2) were not met. At the hearing, Dr. Pryatel testified

the proposed medication was appropriate and necessary, and that F.M.G. was a person requiring treatment. Dr. Pryatel further testified F.M.G. was medication noncompliant, in that F.M.G. refused medication and did not have the capacity to consent. Dr. Pryatel testified that the prescribed medication is the least restrictive form of treatment to meet F.M.G.'s needs, and that the benefits of the treatment outweighed the risks.

[¶ 12] At the close of the State's argument, F.M.G. effectively moved for dismissal of the request to involuntarily treat with medication:

> District Court: Alright. Did you have any other witnesses or anything else to present?
>
> State: No, your honor.
>
> District Court: Alright. And, [Respondent], did you have anything else to present?
>
> Respondent: Ah, Judge, I would move for a directed verdict against the request of the state because under 25–03.1–18.1 requires under section (1)(a), that there be this treating psychiatrist, and another licensed physician. . . .
>
> District Court: Are you looking at the amended provision?
>
> Respondent: I'm looking at the ones that I. . . .
>
> State: Your honor, it requires two and in this case we actually have three. We have Dr. Yabut, Dr. Herniman, and, um, the Dr. Pryatel that testified today. So we've met that.
>
> Respondent: Judge, he's only called one witness and he's rested, he can't call any other witnesses. He's failed to meet the requisite of the statute.
>
> District Court: I understand. Your motion is denied.

F.M.G.'s argument was based on the State's failure to produce a second doctor

to testify at the hearing under N.D.C.C. § 25–03.1–18.1(1)(a). While N.D.C.C. § 25–03.1–18.1(1)(a) requires both a treating and non-treating physician to make certifications consistent with N.D.C.C. § 25–03.1–18.1(1)(a)(1)–(4), this Court previously determined N.D.C.C. § 25–03.1–18.1(1)(a) does not require both treating and non-treating physicians to testify at the hearing. *See In Interest of B.D.*, 510 N.W.2d 629, 633 (N.D. 1994). The district court did not err in rejecting F.M.G.'s motion based on the argument presented to the district court.

[¶ 13] F.M.G.'s certification argument on appeal centers on one of the fundamental purposes of this statute, which is to provide notice to the person the requesting physician seeks to treat with medication. F.M.G. argues, for the first time on appeal, that neither Dr. Yabut nor Dr. Herniman dated the request form, or checked either box on the request form next to "[t]he patient was offered the treatment and refused it," or "[t]he patient lacks the capacity to make or communicate a responsible decision about the treatment with medication." F.M.G. argues these omissions result in failure to certify that she either refused treatment, or lacks the capacity to refuse treatment, and requires this Court to reverse the district court's decision. F.M.G. claims, for the first time on appeal, she did not have notice that she previously refused treatment. However, F.M.G. testified at the hearing that she refused the medication Dr. Yabut seeks to treat her with. Furthermore, at no point during the hearing did F.M.G. argue lack of notice that she either refused treatment or lacked the capacity to communicate a responsible decision about the treatment with medication. F.M.G. did not mention the word "certify" or reference the request form during the entire hearing.

[¶ 14] This Court has repeatedly declined to decide issues raised for the first time on appeal:

A party may not raise an issue or contention that was not previously raised or considered in the lower court for the first time on appeal. "If a party fails to properly raise an issue or argument before the trial court, the party is precluded from raising that issue or argument on appeal."

*Schiele v. Schiele*, 2015 ND 169, ¶ 16, 865 N.W.2d 433 (quoting *S.H.B. v. T.A.H.*, 2010 ND 149, ¶ 12, 786 N.W.2d 706) (citations omitted). " 'Issues or contentions not adequately developed and presented at trial are not properly before this Court. The purpose of an appeal is to review the actions of the trial court, not to grant the appellant the opportunity to develop new theories of the case.' " *Niles v. Eldridge*, 2013 ND 52, ¶ 7, 828 N.W.2d 521 (quoting *In Interest of A.G.*, 506 N.W.2d 402, 403 (N.D. 1993)).

[¶ 15] Here, the request to treat with medications was signed by Dr. Yabut, as F.M.G.'s treating physician, and by Dr. Herniman, as another medical professional not involved in F.M.G.'s current diagnosis or treatment. While F.M.G. broadly referenced N.D.C.C. § 25–03.1–18.1(1)(a) in her motion, F.M.G. narrowly tailored her motion arguing only that the State failed to produce the proper medical providers to testify at the hearing. F.M.G. did not challenge whether the certification requirements under N.D.C.C. § 25–03.1–18.1(1)(a)(1)–(4) were met. Even after the State claimed they had three doctors, including Dr. Herniman, F.M.G.'s only argument was that the State failed to call a second doctor to testify, something not required by N.D.C.C. § 25–03.1–18.1(1)(a). *See In Interest of B.D.*, 510 N.W.2d at 633.

[¶ 16] F.M.G.'s certification issue relating to the request form was not " 'adequately developed and presented at trial.' " *Niles*, 2013 ND 52, ¶ 7, 828 N.W.2d 521 (citations omitted) (quotation marks omitted). The district court was not given an opportunity to rule on those arguments below. It is impossible to "review the actions of the [district] court" pertaining to the certification issue F.M.G. raises for the first time on appeal. *Id.* Addressing F.M.G.'s arguments not raised below would grant her "the opportunity to develop [a] new theor[y] of the case." *Id.* This issue is not properly before us. Therefore, we will not review it on appeal.

### III

[¶ 17] The district court did not err in authorizing treatment of F.M.G. with medication. We affirm the district court's order.

[¶ 18] Lisa Fair McEvers

Gerald W. VandeWalle, C.J.

Kapsner, Justice, dissenting.

[¶ 19] I respectfully dissent.

[¶ 20] Respondent's counsel specifically moved for a "directed verdict" under the statute that sets out the certification requirements for involuntary treatment with medication. I agree with the majority that despite the inartful articulation, this really was a motion to dismiss because the petitioner had failed to meet its burden.

[¶ 21] Where I disagree with the majority is with the analysis that F.M.G. was asserting that it is necessary to have both the treating psychiatrist and a licensed physician not involved in the case of F.M.G. testify at the hearing. We have clearly said this is unnecessary. *Interest of B.D.*, 510 N.W.2d 629, 633 (N.D. 1994). Rather, the argument of F.M.G. is that the State has failed to cure the *deficiencies* of its petition which it could have done by

calling a licensed physician not involved in the diagnosis or treatment of F.M.G.

Judge, he's only called one witness and he's rested, he can't call any other witnesses. He's failed to meet the requisite of the statute.

[¶ 22] Section 25–03.1–18.1(1)(a), N.D.C.C., is clear. A treating and a non-treating physician or psychiatrist shall certify to the four elements laid out in the statute. It is unreasonable to fly-speck the transcript looking for the word "certify" when counsel has referred to the specific section that sets out the certification requirements, begins to discuss those requirements, and then has that discussion cut off by the court.

[¶ 23] Until the State rested, it would have been possible to meet the requirements of N.D.C.C. § 25–03.1–18.1(1)(a) by calling a non-treating physician. On the state of this record, we do not have the statutory requirement that a non-treating physician certify that F.M.G. was offered treatment and refused it or that F.M.G. lacks the capacity to make or communicate a responsible decision about that treatment. See Interest of B.L.S., 2006 ND 218, ¶ 26, 723 N.W.2d 395.

[¶ 24] Section 25–03.1–18.1(1)(a), N.D.C.C., is a statutory prerequisite to issuing an order to involuntarily treat with medication, N.D.C.C. § 25–03.1–18.1(3). It has not been complied with. I would reverse the treatment order.

[¶ 25] Carol Ronning Kapsner

Jerod E. Tufte

Crothers, Justice, specially concurring.

[¶ 26] I concur in the result.

[¶ 27] I agree with the majority's conclusion the district court should be affirmed. I disagree with the majority's conclusion the issue was not sufficiently artic-

ulated at the district court to be preserved for argument on appeal. Majority opinion, ¶ 16. I instead agree with the dissent that the issue suffers "inartful articulation" but is reviewable. (Kapsner, J., dissenting, ¶ 20).

[¶ 28] The language of the applicable statute states in pertinent part:

"As a part of the request [to treat an individual under a mental health treatment order with prescribed medication] the treating psychiatrist and another licensed physician, physician assistant, psychiatrist, or advanced practice registered nurse not involved in the current diagnosis or treatment of the patient shall certify [four items]."

N.D.C.C. § 25.03.1–18.1(1)(a)(1)–(4). Neither the majority nor the dissent holds or say they would hold that the four items were not certified. See Majority opinion, ¶¶ 3, 11; Kapsner, J., dissenting, ¶ 22. Rather, their disagreement is whether two medical practitioners made the required certification. Id.

[¶ 29] Here, the checkbox form and accompanying letter were filed in the court's electronic case management system together as one document. As described by the majority, those documents when read together contain information from which the district court reasonably could have concluded a statutorily compliant certification had been made:

"The form contained boxes to check regarding the refusal of medication and the capacity to make a responsible decision about the treatment with medication. Neither box was checked, and the form was not dated. Attached to the form was a letter dated February 3, 2017, signed by Dr. Yabut. In his letter, Dr. Yabut stated '[F.M.G.] was medication noncompliant.' The letter continued, '[F.M.G.] remains medication non-

compliant. Thus, *we* are petitioning the court for involuntary medication so she can finally be treated. The medications that *we* are going for are Haloperidol, Risperidone, Paliperidone, Olanzapine and Aripiprazole.' (Emphasis added.)"

Majority opinion, ¶ 3. From this evidence I would conclude the dual medical provider certification required by N.D.C.C. § 25–03.1–18(1)(a) has been satisfied, and the district court should be affirmed.

[¶ 30] Daniel J. Crothers